

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF MICHIGAN

MAKINI JACKSON,

    Plaintiff,

vs.

GENESEE COUNTY ROAD COMMISSION,

    Defendant.

Case No. 2:18-cv-11199
Hon. Bernard A. Friedman
Mag. Judge Jonathan J.C. Grey

---

| LEWIS & MUNDAY, P.C. | KIRK, HUTH, LANGE & BADALAMENTI, PLC |
|---|---|
| By: DAVID J. CROSS (P42683) | By: RAECHEL M. BADALAMENTI (P64361) |
| | VICTORIA L. PADULA (P85766) |
| Attorneys for Plaintiff | Attorneys for Defendant |
| 535 Griswold, Ste. 2300 | 19500 Hall Road, Ste. 100 |
| Detroit, MI 48226 | Clinton Twp., MI 48038 |
| (313) 961-2550 | 586-412-4900 |
| dcross@lewismunday.com | rbadalamenti@kirkhuthlaw.com |
| | vpadula@kirkhuthlaw.com |

---

### JOINT FINAL PRETRIAL ORDER

1) **Jurisdiction**.

The Court has jurisdiction pursuant to 28 U.S.C.A. § 1331 (federal question

jurisdiction) and 28 U.S.C.A. § 1343(a)(4) (jurisdiction over civil rights

claims). This Court also has supplemental jurisdiction pursuant to 28

U.S.C.A. §1367 over Plaintiff's state law claims. Jurisdiction is not contested

by either party.

2) **Plaintiff's Claims**

The Genesee County Road Commission(GCRC) hired Plaintiff Ms. Makini·
Jackson as their Human Resources Director and EEOC Officer after the Human
Resources Department had no director for the prior four years. Jackson started with
the Road Commission on March 31, 2016, with an annual salary of $90,704. During
her tenure, she received a salary increase to approximately $93,000 year. Jackson
was terminated by the Commission shortly after she commenced, or completed,
investigations of unresolved discrimination complaints and after she began requiring
GCRC vendors and contractor to comply with the GCRC EEO Plans. Prior to her
termination on October 16, 2016, Jackson's employment record with the
Commission had been clean with no discipline ever having been taken against her,
no warnings of any kind, and no complaints to the GCRC Board of Directors about
her job performance.

GCRC Managing Director, John Daly performed as the "*interim*" Human
Resources Director during the four years that the Commission had no Director. Daly
was unqualified and admittedly did not have Jackson's expertise. Daly
acknowledged he was deficient with respect to EEO processes for the Road
Commission's vendors/contractors, stating: "*I frankly probably wasn't very good at
it.*"

A.   <u>Jackson Addressed Previously Ignored Race and Gender Discrimination Complaints</u>.

After Jackson started at the Road Commission, she discovered there were discrimination complaints that had been brought to John Daly's attention during the four years that he served as the interim director; Daly failed to investigate these complaints or resolve them in any manner while he served as the interim Director. Jackson found that three African American employees, Maintenance Director Anthony Branch, Purchasing Manager Joyce McClane, and Safety Coordinator Felicia Ivey, had lodged written discrimination complaints, directly to Daly against white employee John Bennett who was Director of Facilities and Equipment to Daly but no investigation or appropriate remedial action had taken place by Daly, the Commission's Attorney Thomas Derderian or any third party. In fact, when Jackson joined the Road Commission she spoke to Daly about Branch's complaint, Daly denied Branch had any problems. When Jackson advised Branch of Daly's response, he asked for an EEOC Complaint form and Jackson provided it to him. Further, McClane and Ivey also asked for EEOC complaint forms.

Daly was aware of other employee complaints concerning Bennett, yet he did nothing to address Bennett's behavior. Only Jackson cared enough to conduct an investigation and ensure employee rights and protections were enforced.

After commencing an investigation of the discrimination complaints against John Bennett made by Anthony Branch Jackson would eventually recommend to Daly that John Bennett be placed on administrative leave and be required to have a psychological evaluation to determine if he was fit for duty. That evaluation found Bennett fit for duty but on July 1, 2016, the Road Commission placed conditions on his return to work. These conditions included Bennett's agreement to abide by certain prescribed and appropriate behaviors which included being "professional", not being "disrespectful" or "insubordinate", acting as a "team player", and maintaining a "positive attitude". Bennett challenged the return to work conditions in writing on July 11, 2016, and essentially stated that he would not comply.

In spite of Bennett's stated refusal to comply with the return to work conditions, on July 14, 2016, Daly announced to the Road Commission's staff (staff which included the employees who lodged the complaints against Daly),that Bennett would be returning to work as of July 25, 2016. This notification gave rise to a new round of complaints by the same complaining employees, including Branch and McClane, reasserting their claims of race discrimination by Bennett. Finally, and upon the recommendation of Jackson and the Commission's legal counsel, Daly decided to terminate Bennett's employment. Jackson, under the direction of Daly negotiated a severance agreement with Bennett was permitted to "retire" as of September 16, 2016, with an $80,000 severance package.

The Bennett complaints were handled properly only as a result of Jackson's insistence upon proper legal process  However, angered at Jackson's actions, the Commission, through Daly, retaliated against Jackson  by terminating her employment one month after investigating and resolving the Bennett complaints.

Jackson Insisted Upon Compliance with EEO Policies Applicable to Vendors.

Jackson also served as the Road Commission's EEOC Officer and was responsible for enforcement and review of vendor, suppliers, and contractors' Equal Employment Opportunity Plans (EEOPS). Compliant EEOPs are a legal requisite in order to contract with the Road Commission.  Funding for Road Commission projects requires contractors to have approved EEO Plans in place with the Commission; once approved, an EEOP is valid for a period of three years.

During his four years as the GCRC Interim HR Director, Daly was also the interim EEOC Officer .Daly admitted that he was unqualified for the job and not very good at performing in that role.   Upon her hire, Jackson not only took on the responsibilities of the EEOC Officer, Daly testified regarding Jackson: "It was certainly an improvement over what it had been on my watch. She was much better prepared for that than I was."

When Jackson started her employment with the Road Commission, she discovered multiple contractors' EEO Plans had expired and/or when they were re-

submitted for approval many were deficient.  By July 8, 2016, Jackson revised the "Instructions" for the EEO Plans for  contactors in an effort to clarify existing expectations for EEOP Plan submissions.

Jackson as the EEOC Officer, implemented a policy that required EEOPs to be submitted solely to her. This policy was implemented based on prior GCRC EEOC language that stated questions and concerns regarding the EEOC requirements be directed to the "Human Resources Department".  Jackson clarified the prior language consistent with the direction/intent of the policy as explained to her when she joined the Road Commission.

Jackson's insistence upon adherence to the Road Commission's legal requirements led to dissension amongst fellow Road Commission employees as well as contractors who were used to sloppy processes and legal violations that had been previously overlooked.

Contrary to Defendant's assertion otherwise, Jackson never requested the Commissioners cancel a contract, hold a vendor to be ineligible for future contracts, stop/delay payments and/or stop/delay any Road Commission projects as a result of any EEO Policy for Vendors violations.

Jackson did however believe Road Commission employees Fred Peivandi and John Plamondon violated the Road Commission's legal prohibitions against

interference conduct by GCRC employees that appeared to be collusive. As a case in point, during an August 16, 2016, Road Commission meeting, it was noted the Commission was presented with an August 8, 2016, memorandum from staff that the Board accept the low bid submitted by Wolverine Sealcoating LLC even though Jackson had not received Wolverine's EEO Plan until late on August 15, 2016. During this meeting, Jackson as the EOOC Officer noted to the Board the acceptance request was inappropriate because Peivandi (title) (who was present at the meeting) should not be pushing for a particular contractor and she had advised both Peivandi and Plamondon (title) *before* they had submitted the request that it was inappropriate because Wolverine's EEO Plan had not been submitted/approved. In response, the Board approved the bid *subject to receiving final approved documentation regarding the contractor's EEO Plan.*

In fact, Wolverine's EEO Plan (submitted late in the afternoon on August 15, 2016) was deficient as detailed by Jackson in her August 19, 2016, correspondence to the contractor. Wolverine would submit a revised EEO Plan that same day, and Jackson approved it within two hours. The legal process, as insisted upon by Jackson, was successful for both the Road Commission and this contractor.

Nonetheless and shortly thereafter, again in contravention of the law, Plamondon sent an email dated September 26, 2016, to several Road Commission contractors asking the following:

"Good Afternoon;

Please provide a [sic] update of your firms attempt to get an EEOP completed through our HR department. Inform us if you made a call to start the process, if the call was answered, if the call was not answered did you receive a return call and finally how soon do you think it will be for EEOP approval. Feel free to provide other feedback if necessary.

Please provide by EOB Wednesday September 28th •"

Notably, Jackson was not included on the email, a blatant circumvention of the law establishing the appropriate process. In addition, this email demonstrates Plamondon' s efforts to try undermine Jackson and find information that he could attempt to use against her.

B.  Jackson's October 17, 2016, Termination.

Jackson was terminated on October 17, 2016. When Jackson asked Daly why she was terminated, he declined to provide a reason, citing her at-will employment. In response to the Equal Employment Opportunity Commission's investigation of Jackson's claim of retaliation, the Road Commission stated: "Claimant had proven herself unable to work with most other employees at the Road Commission and had alienated numerous contractors and vendors. The Managing Director had lost all trust and confidence in her ability to perform her job effectively."

The Road Commission admitted in answers to Plaintiff's interrogatories:

"Plaintiff was not charged with violation of any rule, requirement or policy during her employment term at GCRC."

Further, in contrast to the statement to the EEOC, numerous individuals testified that Jackson was well-equipped and had the appropriate disposition for the role. GCRC Maintenance Director Branch testified that his relationship with Jackson was "Excellent" and "No problems." Further, his department, the biggest in the Road Commission, had no problems with her or her performance and she provided good advice and direction. Safety Director Ivey said she had a "good working relationship" with Jackson, that Jackson was a "good supervisor", "always a professional", "she was always helpful to me," and that no one voiced complaints concerning Jackson to her. Personnel Manager Rachel Mullin stated she got along "good" with Jackson, that she did a "good job" as HR Director, and that she (Mullin) had never discussed Jackson's job performance with Daly.

Lastly, the Road Commission's Lead Supervisor and Chair of the Supervisor's Union/Association Ron Latimer testified that he had a "great" relationship with Jackson. Latimer had no complaints and was not aware of complaints from others.

In addition to attempting to paint a picture suggesting Jackson was universally detested, the Road Commission presented falsehoods. For example, Daly claimed that Latimer criticized Jackson. Latimer, however, specifically denied Daly's statements and testified that he never claimed to Daly that: (1) Jackson was very corrosive and had an abrasive communication style; (2) Jackson had only one approach she would use; or (3) Jackson made unreasonable requests of supervisors.

Also, Branch contradicted the Road Commission's statement in its interrogatory answers that the issues he had with Bennett were not race-based.

Plaintiff was unlawfully terminated in retaliation for doing her job, a job that had gone neglected for several years with respect to investigation of employee complaints of discrimination and GCRC vendors', contractors', and suppliers' responsibility to comply with GRCR EEOP submissions. Plaintiff's conduct constituted protected activity and Defendant's claimed reasons for terminating Plaintiff were pretextual.

### 3) **Defendant's Claims**

In this case, Plaintiff's remaining claims assert Count I for Retaliation in Violation of Title VII and Michigan's Elliot Larsen Civil Rights Act ("ELCRA") and Count II for Michigan Public Policy Wrongful Termination/Retaliation, as narrowed following dismissal and partial reversal of dismissal by the Sixth Circuit.

Plaintiff Makini Jackson ("Plaintiff" or "Jackson") was hired on March 31, 2016 and terminated on October 17, 2016 by the former Genesee County Road Commission ("GCRC") Director John Daly ("Daly").   Jackson was terminated because of her abrasive attitude which had been out of control after August 2016 and Jackson went too far when she withheld a vendor payment without authority (or even reporting having done so to Daly).  This occurred on the heels of multiple attempts

by Daly to counsel Jackson about her monolithic, ridged and inflexible demeanor when interacting with GCRC staff and vendors.

During Jackson's time at GCRC, employees, vendors, board members, and union representatives complained to Daly about Jackson. Indeed, between August and October 2016, Daly received almost constant complaints about Jackson's abrasive attitude from members of the Board of Commissioners, every GCRC Department head except one, the two major labor union attorneys, outside contractors and internal GCRC employees. According to Daly, two board members expressed concerns that "they had received complaints from outside parties and from employees related to [Jackson's] communication style." Another board member objected to Jackson's "communication style and abrasiveness and the manner in which she treated [GCRC Counsel] Tom Derderian."

Derderian himself had multiple complaints about Jackson. Jackson did not seem to understand that his client was the GCRC and that he did not work for the HR Department. Derderian explained to Daly that Jackson's requirements that all communications from Derderian route through her and the inability to reach out to individual employees was preventing Derderian from adequately preparing for cases and arbitrations that GCRC was involved in at the time. Derderian also complained that Jackson rewrote Bennett's severance package without his permission. Daly

advised Jackson that she needed to give Derderian more access to GCRC employees and reminded her that Derderian's client was the GCRC

Additionally, every department director at GCRC except Anthony Branch complained about Jackson's communication style to Daly. John Bennett, Melissa Williams, Fred Peivandi, John Plamondon and other directors all complained about Jackson's abrasive and inflexible communication style. Plamondon complained about the way Jackson treated the employees who worked in his department of construction. Peivandi also complained that Jackson was not handling EEOPs in a timely manner, which created problems arranging engineering projects for the upcoming construction season. As was consistent throughout her tenure, Daly supported Jackson's efforts to ensure EEO compliance. Other employees also reported problems with Jackson's communication style. In September 2016, two union representatives reported that Jackson was abrasive, offensive, rigid, and difficult to work with. Two vendors also complained about Jackson. Daly was told that Jackson made them submit multiple drafts of EEOPs and made them "change things on the second submission that hadn't been addressed in the first." They also found Jackson difficult to work with and complained that she did not return their messages in a timely manner. One of the contractors was so concerned that, according to Daly, "they said if Ms. Jackson continued as the HR director, that they were going to not do business with the Road Commission."

The record in this case was unequivocal in this regard; Jackson admitted in deposition she can only speculate that her termination was the product of discrimination or retaliation and not based on her own acrimonious interactions with the GCRC staff and vendors. Director Daly was left with little choice but to terminate Jackson under the circumstances she created at the GCRC, circumstances that are untethered to any protected activities.

To engage in protected activity under Title VII or the ELCRA, a plaintiff must make an overt stand against suspected illegal discriminatory action. "An employee may not invoke the protections of the Act by making a vague charge of discrimination." *Comiskey v. Automotive Industry Action Group,* 40 F. Supp. 2d 877, 897 (E.D. Mich. 1999), quoting *Booker,* 879 F. 2d at 1313). Both Title VII and Michigan law prohibit retaliation against an employee engaged in protected activity which includes where (1) "an employee has made a charge of discrimination, filed a complaint, or otherwise participated in enforcement proceedings;" or (2) "an employee has opposed a violation of the Act;" or (3) participate "in any manner in Title VII enforcement proceedings." *Booker v. Brown & Williamson Tobacco Co.,* 879 F. 2d 1304, 1312 (6th Cir. 1989). The Sixth Circuit ultimately concluded that the mere fact that Jackson was performing her normal job duties was not a legal bar to her ability to raise an oppositional retaliation claim. Yet, the Court found a

question of fact based only on Jackson's own perception of her own actions rather than an objective view of the events.

With that context, and critically, without the liberal standard on summary judgment, there is no dispute that Jackson was not involved in any Title VII proceedings. Further, Jackson admits that she was not aware of any Equal Employment Opportunity Commission ("EEOC") Complaints filed during her time at the GCRC (or even just prior to her hiring). She likewise admits that she never reached a conclusion on whether there had been any discriminatory conduct in her various investigations related to Branch and Bennett. Similarly, her opinion that her EEOP actions were combating the possibility of discriminator hiring is, simply, an opinion. While the Sixth Circuit believed it created a question of fact, at trial Jackson will have to present some evidence that she opposed actual tangible events rather than hypothetical possibilities – something she's already admitted does not exist. Ultimately, Jackson's mere subjective belief that she was terminated because she investigated employee complaints is plainly insufficient.

Regardless of whether Jackson can show she engaged in protected activity, she cannot establish a causal connection or pretext between any protected activity and her termination. To do so, she must produce sufficient evidence from which an inference could be drawn that the adverse action would not have been taken in the absence of the protected activity. *Nguyen v. City of Cleveland,* 229 F.3d 559, 563

(6th Cir.2000).   Under the ELCRA, the standard is greater, the protected activity must be a significant factor in her termination; not just 'a' factor. *Barrett v. Kirtland Cmty. Coll.*, 245 Mich. App. 306, 315 (2001). The evidence is undisputed that Jackson's abrasive attitude was increasingly becoming a concern for Director Daly and that in the week before her termination it was discovered that Jackson put a hold payment on a vendor check without authority.  The record is clear that this was the predicate for Daly's decision to terminate.  An employee is not protected when she violates legitimate rules and orders of her employer, disrupts the employment environment, or interferes with the attainment of her employer's goals. *Booker,* at 1312. These are precisely the legitimate, non-protected reasons for Jackson's termination.

Finally, to rebut the confirmed legitimate business reasons for Jackson's termination, she will have to demonstrate that her termination was pretext. A plaintiff can establish pretext by showing that the proffered reason: "(1) ha[d] no basis in fact; (2) did not actually motivate the [adverse employment] action; or (3) [was] insufficient to warrant the [adverse employment] action." *Brown v. Kelsey-Hayes Co.*, 814 F. App'x 72, 80 (6th Cir. 2020). Set within this context, the jury will also be instructed to consider the same-actor inference as, here, the record is undisputed that Director Daly hired Plaintiff Jackson and also made the decision to terminate her.  In such a case, the fact finder can "infer a lack of discrimination from

the fact that the same individual both hired and fired the employee." *Buhrmaster v. Overnite Transportation Co.,* 61 F. 3d 461, 463-4 (6th Cir. 1995). Plaintiff's burden to establish that this rationale was pre-textual is substantial, in as much as she has already admitted that her beliefs are speculative and there has been no testimony to date that Daly opposed Jackson's efforts to enforce EEO policies.

### 4) Stipulation of Facts

The parties stipulate to the following facts:

1. The position of Human Resource Director was unfilled for four (4) years until GCRC Director John Daly requested to fill the position.

2. GCRC Director John Daly interviewed the top two (2) applicants selected by the interview panel, and recommended Plaintiff to fill the position.

3. The GCRC Board of Commissioners approved hiring of Plaintiff by Director Daly to fill the Human Resource Director position.

4. Plaintiff Makini Jackson, an African American woman, held the position of Director of Human Resources and Administrative Services and served as the EEOC Officer for the Genesee County Road Commission from March 31, 2016, until October 17, 2016.

5. Director Daly terminated Ms. Jackson from her employment with the GCRC on October 17, 2016.

6. Plaintiff's annual salary was $93,000.00 at the time of her termination.

7. As the EEOC Officer for the GCRC, Plaintiff was responsible for approving the Equal Employment Opportunity Policies ("EEOPs") submitted by vendors and contractors who worked with the GCRC.

8. Upon her hiring, Plaintiff became a part of the investigation process for existing internal personnel complaints, including one against John Bennett.

9. Plaintiff did not reach any conclusions regarding the complaint(s) against John Bennett, including whether he was engaged in any discriminatory conduct on the basis of race or otherwise.

10. Jackson's investigation of John Bennett's behavior led her to recommend Bennett be put on administrative leave and undergo a psychiatric evaluation.

11. GCRC Director Daly agreed with Jackson's recommendation that Bennett be put on administrative leave and undergo a psychiatric evaluation and both were implemented.

12. When Bennett was cleared by the psychiatric evaluation to return to work, Jackson and Director Daly had discussion with outside counsel Thomas Derderian before allowing Bennett to return to work.

13. Attorney Derderian and Director Daly sent a list of conditions to Bennett which he had to agree to before he could return to work.

14. Bennett would not agree to the list of conditions.

15. At recommendation of Plaintiff, Director Daly agreed that Plaintiff could attempt to negotiate a severance agreement with Bennett in lieu of further evaluating whether he should return to work.

16. Though the parties dispute whether Plaintiff exceeded the amount she was authorized to offer, Plaintiff was able to negotiate a severance agreement with Bennet that Director Daly did approve.

17. The Bennett severance agreement was approved by the GCRC Board of Commissioners on August 16, 2016. Plaintiff did not suffer non-economic damages as a result of her termination.

18. Director Daly twice counseled Jackson about her ridged and inflexible demeanor, in August and September, and about a month before her termination.

19. On October 30, 2016 Director Daly hired Donna Poplar, an African American female, to replace Plaintiff in the position of GCRC Human Resources Director and EEOC Officer.

5) **Issues of Fact to be Litigated.**

**Plaintiff States:**

1. Whether Jackson's conduct as EEO Officer was protected activity under Title VII?

2. Did Director John Daly's support of Plaintiff's handling of the Branch matter and Plaintiff's changes to the EEOP process eliminate causation under Title VII?

3. Did GCRC outside counsel Thomas Derderian and/or Director Daly desire to terminate Bennett upon receipt of his response to the July 1, 2016 return to work letter.

4. Did Plaintiff exceed the wage cap authority she possessed in negotiating the severance agreement with Bennett?

5. Did Plaintiff place a hold on a vendor payment in mid-October 2016?

6. Did Plaintiff possess authority to place a hold on payments to GCRC vendors?

7. Was Plaintiff's communication style viewed as abrasive, inflexible, and offensive by any employees, the union, vendors, directors, and/or commissioners of the GCRC?

8. Did any employees, the union, vendors, directors, and/or commissioners of the GCRC complain about Plaintiff's communication style to Director Daly?

9. Did Plaintiff interfere with the efforts of GCRC retained outside counsel Derderian's investigation and handling of legal matters, including preparation for depositions, arbitration and/or trials, on behalf of the GCRC

10. Did Plaintiff fail to timely respond to vendors regarding EEOP questions and/or provide inconsistent feedback and responses to questions and submitted policies?

11. What were Director Daly's reasons for terminating Plaintiff?

**Defendant States:**

1. Was Jackson engaged in protected activity when she imposed unreasonable conditions on vendors as part of the EEOC process?

2. Was Jackson engaged in protected activity when she took, but did not investigate, formalize or take any action regarding personnel complaints?

3. Was Jackson terminated because of her race?

4. Did Director Daly openly support Plaintiff's changes to and updating of the EEOP policy and plan submissions?

5. Did Directly Daly openly support Plaintiff's recommendations regarding all personnel complaints with which she was involved?

6. Did Jackson ever file any complaint under the GCRC Equal Opportunity Policy, which she admittedly received at time of hiring, regarding Director Daly and was charged with enforcing?

7. Other than Jackson's mere subjective belief, is there any evidentiary basis on which to conclude that Jackson was terminated in violation of Title VII or the ELCRA?

8. Was Plaintiff aggressive, rude and accusatory toward longtime GCRC attorney Derderian?

9. Was Plaintiff's office staff openly uncomfortable with the tone and content of emails they were requested to send in their own name?

10. Was Plaintiff counseled by Director Daly after she accused then-Engineering Director Fred Peivandi and others in engineering including John Plamondon of "collusion" merely because they vendors asked them procedural questions regarding EEOP submissions?

11. Did multiple GCRC employees report to Director Daly, starting in August, that Jackson was inflexible and that her communication style was "abrasive" and "rigid."

12. Did Director Daly receive complaints about Jackson's rigid and inflexible demeanor from three members of the Board of Commissioners, every GCRC Department head except one, the two major labor union attorneys, several outside contractors and GCRC employees including from the IT Department?

13. Did Director Daly counsel Plaintiff after reviewing communications between Plaintiff and vendors from which he determined her communication style was "not conducive to continued good relations"?

14. Did Plaintiff target Finance Director Williams to the point that Williams resigned from GCRC?

15. In the weeks preceding Plaintiff's termination, did GCRC vendors report to Director Daly that Plaintiff had an "abrasive communication style," "was difficult to work with, and "did not return calls in a timely manner"?

16. The week before Director Daly terminated Jackson, he had a complaint about nonpayment from a longtime GCRC vendor that Daly found out was attributed to a "hold" placed on the check by Jackson though Jackson had no authority to take such action?

17. Did Plaintiff direct GCRC vendors that they would not receive approval, answers to questions or forms needed for EEOP submissions if they spoke to anyone else at GCRC as part of the EEOP process and/or failed to address her as "Director Jackson"?

18. Did Jackson have conflicts with GCRC union representatives that were reported to Director Daly?

19. Did employees and vendors of the GCRC report to Direct Daly that they would not communicate with Plaintiff because of her demeanor?

20. Though Plaintiff claims now that GCRC vendors would not cooperate in the EEOP Plan submissions, did Plaintiff ever inform Director Daly that any vendor had objection to the EEOP Plan requirements?

21. Did employees at GCRC fear Plaintiff?

22. In the days preceding her termination, did GCRC vendors contact Director Daly to report that Plaintiff was unreasonable to work with and had even made one secretary cry during a telephone call?

23. Is there any evidentiary basis from which to conclude Director Daly's reasons for terminating Plaintiff, being her abrasive communication style and rude demeanor with employees and vendors, is mere pretext?

6) **Issues of Law to be Litigated**

    a. Whether Plaintiff engaged in protected activity related to her actions reorganizing the GCRC EEOP process and in her communications with GCRC staff and vendors?

    b. Whether Defendant GCRC had legitimate, non-discriminatory, non-pretextual justifications for terminating Plaintiff.

    c. Whether Defendant GCRC's termination of Plaintiff's employment was in retaliation for Plaintiff engaging in protected activity under Title VII.

    d. Does the application of the same-actor inference defeat allegation of pretextual termination where Director Daly was the primary decision maker to hire, supervise, and terminate Plaintiff?

**Defendant's Statement of additional Issues of Law to be Litigated**

The following issue is not stipulated, counsel for the parties disagree whether the Sixth Circuit ruled on this issue as a matter of law or found that it was a triable issue for the jury to decide:

a.  Whether Plaintiff engaged in protected activity related to her actions during the Bennett investigation?

b.  Whether demanding vendors attempting to submit EEOP Plans to address her as "Director Jackson" and/or directing vendors that they were not allowed to speak to anyone else at GCRC even if she refused to return their calls constitutes protected activity?

c.  Whether there is a sufficient factual or legal basis to present an argument on and/or find in favor of Plaintiff on the issue of pretext.

## 7) Evidence Problems Likely to Arise at Trial

Plaintiff expects to file motions in limine by or before the Final Pre-Trial Conference to the extent concurrence is denied in any respect]:

- Exclude any/all testimony, documents, or otherwise not produced during discovery to introduce new pretextual claims (framing from court of appeals opinion);
- Preclude any testimony, argument or introduction of evidence not produced during discovery (trial by surprise);
- Preclude introduction of evidence pertaining to previous and/or subsequent employee-hires for the HR Director position;
- Preclude any/all testimony claiming that Plaintiff's investigation into Anthony Branch's complaints that John Bennett was discriminating against Branch because of his race-was not protected activity?
- Preclude any/all testimony as to Defendant's belief that Jackson's investigation of Bennett's alleged discriminatory conduct on the basis of race toward Anthony Branch was unreasonable?
- Preclude all evidence of inadmissible hearsay solicited through the testimony of John Daly

Defendants have filed a Motion in Limine addressing:

- Preclude any testimony, argument or introduction of evidence not produced during discovery (trial by surprise); (Plaintiff stipulated to this Motion and the Parties will be filing Stipulated Orders);
- Preclude or limit testimony or documentary evidence to support a new pretextual theory related to certain conduct of John Daly, or the lack thereof, while he held the position of interim HR Director;
- Prohibit argument, testimony and evidence related to Plaintiff's claims of engaging in certain "protected activities" during her tenure at GCRC that have been dismissed by the Sixth Circuit;
- Prohibit testimony, argument or introduction of evidence of non-economic damages to support an award to Plaintiff for her unsupported claim(s) of emotional damages; (Plaintiff stipulated to this Motion and the Parties will be filing Stipulated Orders);
- Preclusion of testimony, argument or introduction of evidence relating to the Melissa Williams complaint. (Plaintiff has agreed to stipulate to this Motion on the condition of acceptable language).

**DEFENDANTS OBJECTION:** to Plaintiff's Exhibit regarding Joyce McClane's April 29, 2016 Genesee County Road Commission Personnel Complaint Form;

**PLAINTIFF'S OBJECTION**: Defendants are filing a Motion in Limine to exclude testimony, exhibits or reference to the Melissa Williams complaint.

8) **Witnesses**

**Plaintiff will call the following witnesses to testify at trial:**

1. John Daly
2. Tom Derderian
3. John Bennett
4. Anthony Branch
5. Ronald Latimer
6. Cloyce Dickerson
7. Ronnie Dunn

8. David Arceo

*Plaintiff reserves the right to call/recall any witness listed on Plaintiff's Will Call list.*

**Plaintiff may call the following witnesses to testify at trial:**

1. Rachel Mullin, Senior HR Coordinator
2. Donna Poplar, Human Resources and Administrative Services Director
3. Record keeper(s) and individuals responsible for EEO contract compliance or other contracting matters with the GCRC identified by Defendant in response to the EEOC's request for information No. 4

**Defendant will call the following witnesses to testify at trial:**
1. Makini Jackson
2. Director John Daly

*Defendant reserves the right to call/recall any witness listed on Plaintiff's Will Call list.*

Defendant may call the following witnesses to testify at trial:
1. Thomas Dederian
2. Melissa Williams
3. Cherry Grant
4. Rachel Mullin
5. Fred Prievandi
6. John PlamondonDonna Poplar
7. Felicia Ivey
8. Ronald Latimer
9. John Mandelaris
10. Past and/or present employees, officers, representatives, and/or records custodians of GCRC Vendors during the time period Plaintiff worked at GCRC:

      i.  Precision Computer Solutions, Inc.;

     ii.  Wolverine Sealcoating & Asphalt Maintenance;

*Defendant reserves the right to call/recall any witness listed on Plaintiff's Will Call list.*

9) **Exhibits**

| Plaintiff's Exhibits | # | Summary |
|---|---|---|
| July 1, 2016, correspondence from Thomas Dederian to John Bennet | | Return to work letter |
| August 8, 2016, John Bennet Severence Agreement and Release | | Severance agreement terms |
| July 8, 2016, Email from Makini Jack to Anthony Branch and others | | EEOP Policy |
| July 14, 2016, Email from Jay Robert to Makini Jackson | | Phillips Trucking and Excavating |
| July 14, 2016, email response for Makina Jackson to Jay Robert | | Phillips Trucking and Excavating |
| August 19, 2016, email from Makini Jackson to Wolverine Coating | | Wolverine's EEOP |
| Daly Deposition | | |
| Dederian Deposition | | |
| Branch Deposition | | |
| Joyce McClane's April 29, 2016 Genesee County Road Commission Personnel Complaint Form | | Written complaint filed against Melissa Williams |

| | | |
|---|---|---|
| Genesee County Road Commission Job Description | | Human Resources Director job description |
| September 26 and 27, 2016, email communication between Michael Pifer, John Plamondon, Richard Hill and John Daly | | Contacting Makina to discuss EEOPs |
| 9/26/2016 Email from John Plamondon | | Communication with vendors re: EEOPs |
| 9/28/2016 Email from Makini Jackson to John Plamondon | | Communications between Engineering Department and vendor EEOP Plans |
| 10/17/2016 Email from John Daly | | Notice of his termination of Makini Jackson |
| | | |

| Defendant's Exhibits | # | Summary |
|---|---|---|
| July 1, 2016, correspondence from Thomas Derderian to John Bennett GCRC 00152-153 | | Return to work letter, with Bennett commentary |
| July 14, 2016 Letter from John Daly to John Bennett regarding proposed return to work GCRC  00148-149 | | Proposal regarding Bennett return to work |
| April 28, 2016 Letter Jackson to Bennett | | Notice of Administrative Leave |
| Jackson 000141-145 | | GCRC approval of Bennett Severance Agreement and copy of agreement |
| Jackson 000182-183 | | Aug. 19, 2016 Email from Jackson to Wolverine |
| GCRC 0014-18 | | Jackson Resume |
| GCRC 0019-20 | | Jackson Employment Agreement |
| GCRC 0025-26 | | Jackson acknowledgment of receipt of personnel policies |

| GCRC 0040-54 | | GCRC Diversity Training 2013 |
|---|---|---|
| GCRC 0055-61 | | GCRC Diversity Training 2015 |
| GCRC 0064-65 | | September 2016 email chain Peivandi and Daly |
| GCRC 0066-67 | | June 2016 Email chain Peivandi and Jackson |
| GCRC 0068-69 | | July 8, 2016 Email Jackson to GCRC Directors |
| GCRC 0070-71 | | September 2016 email chain Plamondon and Peivandi |
| GCRC 0072-74 | | June 2016 email chain Grand River and Jackson |
| GCRC 0079-80 | | July 13, 2016 email chain Peivandi and Jackson |
| GCRC 0081-82 | | September 28, 2016 email Jackson to Plamondon |
| GCRC 0086-88 | | September 26, 2016 emails regarding Kraft Engineering EEO Plan |
| GCRC Complaint Procedure GCRC 00102-103 | | Aug. 16, 2015 Procedure |
| GCRC EEO Plan for Vendors GCRC 00100-101 | | 2016 Jackson revised |
| GCRC Board EEO Policy Statement GCRC 00104 | | Effective 12/10/2002 |
| July 15, 2016 Letter Jackson to Bennett GCRC 00145 | | Proposed Severance Offer |
| GCRC Title VI Non-Discrimination Plan GCRC 00105-130 | | Eff. 11/21/2013 |
| Jackson 000088-90 | | GCRC Vendor List |
| GCRC 0091 | | Jackson EEOC Charge May 12, 2017 |
| GCRC 0095-99 | | GCRC EEO Plan Submission Instructions pre 9-9-16 |
| GCRC 00131-136 | | GCRC Workplace Rules |

| | | |
|---|---|---|
| GCRC Organizational chart | | June 28, 2016 |
| Oct 2015 GCRC HR Director Job Description | | |
| Jackson 000124-133 | | Jackson summary of events to EEOC |
| Jackson 00196 | | Daly Email re Jackson termination |
| Jackson 00417-421 | | Sept 27 2016 email chain |
| | | |
| Makini Jackson Deposition | | |
| Anthony Branch Deposition | | |
| John Daly Deposition | | |
| Thomas Derderian Deposition | | |
| Cloyce Dickerson Deposition | | |
| Felicia Ivey Deposition | | |
| Ronald Latimer Deposition | | |
| Rachel Mullin Deposition | | |

*The parties reserve the right to designate any overlapping exhibits as Joint Exhibits prior to trial.*

10) **Damages**

Plaintiff seeks compensatory damages as follows:

> Balance of 2016 – 2017 Annual Salary and Benefits:
> 2017 Annual Salary and Benefits: $93,500.00
> Medical Cost (COBRA payments) for 2016-2017: $5950.00

> **Plaintiff's Total Demand Amount:**

11) **Trial**

A. Jury trial
B. Estimated length of trial: 3-5 days

12)    **Settlement**

The parties have conferred on multiple occasions to consider settlement. The most recent meditation occurred on December 14, 2021. The parties were not able to settle this matter at that time. The parties are currently engaged in settlement negotiations, Plaintiff having conveyed a settlement demand on September 13, 2022, which has been conveyed to the appropriate decisionmakers at the GCRC.

The parties agree to continue negotiations prior to the Final Pre-Trial Conference with the Court, and request the Court's assistance with continuing such discussion at the Final Pre-Trial, and to the extent not resolved, through Trial.

13)    **Filing of Trial Briefs, Findings and Instructions**.

Trial briefs and requests for jury instructions must be filed on the day of trial unless the Court orders otherwise.

14)    **Additional Requirements**

A Judge, in an appropriate case, may add additional requirements to the Joint Final Pretrial Order, or may suspend application of this Rule in whole or in part.

15)    **Juror Costs Attributed To Parties**

The parties acknowledge that the Court may assess juror expenses under LR 38.3.

Jointly submitted this 17th day of January, 2023:


/s/David J. Cross                              /s/Raechel M. Badalamenti
Attorney for Plaintiff                         Attorney for Defendants



     **IT IS SO ORDERED.**

                       Hon. Bernard A. Friedman
                       Senior United States District Judge

Dated: January 24, 2023
       Detroit, Michigan