UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF MICHIGAN

MAKINI JACKSON,

                                Case No. 2:18-cv-11199-BAF-JJCG

      Plaintiff,                   Hon. Bernard A. Friedman

vs.                             Mag. Jonathan J.C. Grey

GENESEE COUNTY ROAD COMMISSION,

      Defendants.

---

| LEWIS & MUNDAY, P.C. | KIRK, HUTH, LANGE & BADALAMENTI, PLC |
|---|---|
| By: DAVID J. CROSS (P42683) | By: RAECHEL M. BADALAMENTI (P64361) |
|     RONDA T. TRUVILLION (P70767) |     VICTORIA L. PADULA (P85766) |
| Attorneys for Plaintiff | Attorneys for Defendant |
| 535 Griswold, Ste. 2300 | 19500 Hall Road, Ste. 100 |
| Detroit, MI  48226 | Clinton Twp., MI 48038 |
| (313) 961-2550 | 586-412-4900 |
| dcross@lewismunday.com | rbadalamenti@kirkhuthlaw.com |
| rtate@lewismunday.com | vpadula@kirkhuthlaw.com |

---

## DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW OR, ALTERNATIVELY, FOR A NEW TRIAL

## BRIEF IN SUPPORT

## REQUEST FOR HEARING

## CERTIFICATE OF SERVICE

NOW COMES Defendant Genesee County Road Commission ("GCRC"), by and through counsel Kirk, Huth, Lange & Badalamenti, PLC, and pursuant to Fed. R. Civ. P. 50 and 59, moves for Judgment as a Matter of Law or, alternatively, a New Trial, for the reasons set forth herein:

1

1.     This matter proceeded to jury trial on Tuesday, January 31, 2023.

2.     A verdict was reached on Friday, February 2, 2023. The jury rendered a verdict in favor of Plaintiff on her claims of (a) Retaliation in violation of Title VII and ELCRA; and (b) wrongful termination in violation of Michigan's Public Policy.

3.     The verdict was against the great weight of the evidence.  Defendant was not permitted to argue its Motion for Directed Verdict given the insufficiency of evidence presented in Plaintiff's case-in-chief but now seeks judgment notwithstanding the verdict on the same basis under Fed. R. Civ. P. 50(b).

4.     Additionally, or alternatively, pursuant to Fed. R. Civ. P. 59(a)(1), Defendant requests a new trial in this matter given irregularities at Trial which rendered the proceedings unfair to Defendant GCRC. This included (a) errors of law that were prevalent in the proceedings about whether Plaintiff was engaged in "protected activity" to which the Court and the Jury Instructions adopted a standard inconsistent with the Court of Appeals decision; (b) a confusing and erroneous Jury Verdict Form under which Plaintiff was not required to establish essential elements of her claim before liability was determined; and (c) the reading of a "clarification" of law to the Jury *after* closing arguments that was highly suggestive of the outcome jurors ought to reach.

2

5.      Remittitur or a new trial is further required given that Plaintiff demanded non-economic loss contrary to established orders limiting recovery in this case to actual wage-loss only.

6.      Defendants sought concurrence on 2/2/2023 and 2/27/2023 regarding the relief requested in this Motion, but concurrence was not received.

WHEREFORE, Defendant Genesee County Road Commission respectfully requests this Honorable Court grant its Motion for Judgment as a Matter of Law in favor of Defendant, or in the alternative, order a New Trial in this matter.

Respectfully Submitted,

KIRK, HUTH, LANGE & BADALAMENTI, PLC


s/Raechel M. Badalamenti
RAECHEL M. BADALAMENTI (P64361)
Attorneys for Defendant
19500 Hall Road, Ste. 100
Clinton Twp., MI 48038
586-412-4900
rbadalamenti@kirkhuthlaw.com

Dated:  February 28, 2023

3

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF MICHIGAN

MAKINI JACKSON,

       Case No. 2:18-cv-11199-BAF-JJCG

     Plaintiff,       Hon. Bernard A. Friedman

vs.       Mag. Jonathan J.C. Grey

GENESEE COUNTY ROAD COMMISSION,

     Defendants.

---

## BRIEF IN SUPPORT OF DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW OR, ALTERNATIVELY, FOR A NEW TRIAL

i

# **TABLE OF CONTENTS**

TABLE OF CONTENTS............................................................................II

I.   INDEX OF AUTHORITIES..........................................................III

II.  STANDARD OF REVIEW ...............................................................1

III. LAW AND ANALYSIS ...................................................................3

A.   THE COURT APPLIED AN ERRONEOUS LEGAL STANDARD IN DECLINING TO
HEAR DEFENDANT'S MOTION FOR DIRECTED VERDICT AND, POST-VERDICT,
DENYING ALL PENDING MOTIONS DESPITE INSUFFICIENCY OF THE EVIDENCE
PRESENTED BY PLAINTIFF..............................................................3

   1.   Plaintiff Did Not Meet Her Burden To Establish But-For Causation
   Between a Protected Activity and Her Termination. ...........................4

   2.   Plaintiff Did Not Meet Her Burden To Establish Pretext. ..........................5

B.   THE COURT APPLIED AN ERRONEOUS LEGAL STANDARD TO THE JURY
INSTRUCTIONS AND THE JURY VERDICT FORM. ....................................12

   1.   The Jury Instructions Improperly and Confusingly Instructed Jurors that
   Plaintiff Was Engaged in Protected Activity Regarding EEO Plan
   Communications with Vendors..........................................................13

   2.   The Jury Verdict Form Utilized Resulted in a Direct Inconsistency with
   the Court of Appeals Ruling in this Matter and Imposed an Improper Legal
   Standard Given the Burden-Shifting Framework Required in this Retaliation
   Case. ....................................................................................20

C.   A NEW TRIAL IS REQUIRED GIVEN PLAINTIFF'S DEMAND FOR AND AWARD OF
NON-ECONOMIC DAMAGES CONTRARY TO ECF NO. 54. ......................23

IV.  CONCLUSION AND RELIEF REQUESTED ................................................25

KIRK, HUTH, LANGE & BADALAMENTI, P.L.C.

ii

## I.    INDEX OF AUTHORITIES

**CASES**

*Barnes v. Owens-Corning Fiberglass Corp.,*
    201 F.3d 815 (6th Cir. 2000) ...............................................................2

*Barrow v. City of Cleveland*,
    773 F. App'x 254 (6th Cir. 2019)........................................................20

*Booker v. Brown & Williamson Tobacco Co.,*
    879 F.2d 1304 (6th Cir. 1989) ................................................. 5, 9, 18

Braithwaite v. Timken Company,
    258 F.3d 488 (6th Cir. 2001) ...............................................................8

*Braun v. Ultimate Jetcharters, LLC,*
    828 F.3d 501 (6th Cir. 2016) ...............................................................3

*Clarksville–Montgomery Cnty. Schools. v. U.S. Gypsum Co.*,
    925 F.2d 993 (6th Cir. 1991) ...............................................................2

*Coleman v. State of Tenn.,*
     998 F. Supp. 840 (W.D. Tenn. 1998) ................................................23

*Duncan v. Duncan,*
    377 F.2d 49 (6th Cir. 1967) .................................................................3

Fryman v. Federal Crop Ins. Corp.,
    936 F.2d 244 (6th Cir.1991) ..............................................................12

*Hall v. State Farm Ins. Co.*,
    1 Fed.Appx. 438 (6th Cir. 2001).........................................................21

*Haynes v. Northrop Grumman Mission Sys.,*
    No. 3:05CV303, 2007 WL 2688277 (S.D. Ohio Sept. 11, 2007) ........7

*Hillside Prods. v. Cnty. of Macomb*,
    389 Fed.Appx. 449 (6th Cir. 2010).......................................................2

*Holmes v. City of Massillon*,
    78 F.3d 1041 (6th Cir. 1996) ...............................................................2

KIRK, HUTH, LANGE & BADALAMENTI, P.L.C.

*Imwalle v. Reliance Medical Products, Inc.*,
   515 F.3d 531 (6th Cir. 2008) ...............................................................20

*Jackson v. City of Cookeville*,
   31 F.3d 1354 (6th Cir.1994) ................................................................23

*Jackson v. Genesee County Road Commission.*,
   999 F.3d 333 (6th Cir. 2021) .......................................... 5, 13, 14, 16, 17, 21, 22

*Johnson v. University of Cincinnati*,
   215 F.3d 561 (6th Cir. 2000) ...............................................................15

*Jones v. Nissan N. Am., Inc.*,
   438 Fed.Appx. 388 (6th Cir. 2011).........................................................2

*Jones v. St. Jude Med. S.C., Inc.*,
   823 F. Supp. 2d 699 (S.D. Ohio 2011) ...................................................8

*King v. William Beaumont Hosp.*,
   No. 10-13623, 2014 WL 1260382 (E.D. Mich. Mar. 27, 2014)....................22

*Majewski v. Automatic Data Processing, Inc*.,
   274 F.3d 1106 (6th Cir.2001) ...............................................................6

*Manzer v. Diamond Shamrock Chems. Co.*,
   29 F.3d 1078 (6th Cir.1994) .................................................................6

*McDonnell Douglas Corp. v. Green*,
   411 U.S. 792 (1973)..........................................................................14

*Meyers v. Wal- mart Stores, East, Inc*.,
   77 F. Supp. 2d 826 (1999) ...................................................................1

*Mitchell v. Toledo Hosp.*,
   964 F.2d 577 (6th Cir.1992) ................................................................20

*Montgomery Ward & Co., v. Duncan*,
   311 U.S. 243 (1940)...........................................................................1

*Redlin v. Grosse Pointe Pub. Sch. Sys.*,
   921 F.3d 599 (6th Cir. 2019) ..............................................................6, 7

KIRK, HUTH, LANGE & BADALAMENTI, P.L.C.

iv

*Reeves v. Sanderson Plumbing Prods., Inc.*,
530 U.S. 133 (2000)................................................................6

*Reynolds v. Green*,
184 F.3d 589 (6th Cir.1999) .................................................14

*Risch v. Royal Oak Police Dep't*,
581 F.3d 383 (6th Cir. 2009) ...............................................22

*Rymer v. Davis*,
754 F.2d 198 (6th Cir.1985) ...................................................3

*Seoane–Vazquez v. Ohio State University*,
577 Fed.Appx. 418 (6th Cir.2014)........................................16

*TCP Industries, Inc. v. Uniroyal, Inc.*,
661 F.2d 542 (6th Cir. 1981) ..................................................3

*Texas Department of Community Affairs v. Burdine*,
450 U.S. 248 (1981)........................................................ 20, 21

*Therasense, Inc. v. Becton, Dickinson and Co.*,
593 F.3d 1325 (Fed. Cir. 2010) ...........................................12

*University of Texas Southwestern Medical Center v. Nassar*,
570 U.S. 338 (2013)...............................................................16

*Weisgram v. Marley Co.*,
528 U.S. 440 (2000)..................................................................1

*Wilkins v. Eaton Corp.*,
790 F.2d 515 (6th Cir. 1986) ......................................5, 6, 7, 8

*Woodbridge v. Dahlberg*,
954 F.2d 1231 (6th Cir.1992) ...............................................18

**STATUTES**

42 U.S.C. § 2000e, et seq.................................................. 14, 18
M.C.L.A. 37.2101, et seq................................................... 14, 18

**RULES**

Fed. R. Civ. P 59 ..............................................................2, 23

KIRK, HUTH, LANGE & BADALAMENTI, P.L.C.

v

Fed. R. Civ. P. 50 ...................................................................................................3
Fed. R. Civ. P. 51 .................................................................................................18

KIRK, HUTH, LANGE & BADALAMENTI, P.L.C.

## II.    <u>STANDARD OF REVIEW</u>

The standard of review for a motion for judgment notwithstanding the verdict ("JNOV") requires a review of the evidence and all legitimate inferences in a light most favorable to the non-moving party. Only if the evidence so viewed fails to establish a claim as a matter of law should a motion for JNOV be granted. If the evidence is such that reasonable people could differ, the question is for the jury and JNOV is improper. *Weisgram v. Marley Co.*, 528 U.S. 440 (2000); *Meyers v Wal- mart Stores, East, Inc.*, 77 F. Supp. 2d 826 (1999); *Montgomery Ward & Co., v. Duncan*, 311 U.S. 243 (1940).

The grant or denial of a motion for new trial on the basis that the verdict is against the great weight of evidence rests within the sound discretion of the trial court. *Meyer, supra*; *Montgomery Ward & Co., supra*. In deciding a motion for a new trial, it is appropriate to examine all the testimony and all legitimate inferences that may be drawn in the light most favorable to the plaintiff. *Id*. The test is not whether any competent evidence exists to support the verdict. Rather, it is incumbent on the trial court to determine whether the overwhelming weight of the evidence favors the losing party. Where it appears that a verdict of a jury is against the great weight of the evidence it becomes the duty of the trial court upon motion of a party to set aside the jury's verdict and grant a new trial. *Id*. Even though the testimony might have given the party receiving the verdict the right to

KIRK, HUTH, LANGE & BADALAMENTI, P.L.C.

1

go to the jury with the question, a new trial should be granted where the great weight of the evidence is contrary to the verdict. *Id.*

Separately, Fed. R. Civ. P 59(a)(1)(A) provides for a new trial "when a jury has reached a seriously erroneous result as evidenced by (1) the verdict being against the weight of the evidence; (2) the damages being excessive; or (3) the trial being unfair to the moving party in some fashion." *Jones v. Nissan N. Am., Inc.,* 438 Fed.Appx. 388, 396 (6th Cir. 2011). "Courts are not free to reweigh the evidence and set aside the jury verdict merely because the jury could have drawn different inferences." *Barnes v. Owens-Corning Fiberglass Corp.,* 201 F.3d 815, 821 (6th Cir. 2000). However, a new trial should be granted "when a jury has reached a seriously erroneous result" [*Holmes v. City of Massillon*, 78 F.3d 1041, 1045-46 (6th Cir. 1996)] or if the Court "improperly applied the law or used an erroneous legal standard." *Hillside Prods. v. Cnty. of Macomb*, 389 Fed.Appx. 449, 455 (6th Cir. 2010). The burden of demonstrating the necessity of a new trial is on the moving party, and the decision whether to grant such relief is a matter vested within the sound discretion of the district court. *Clarksville–Montgomery Cnty. Schools. v. U.S. Gypsum Co.*, 925 F.2d 993, 1002 (6th Cir. 1991).

KIRK, HUTH, LANGE & BADALAMENTI, P.L.C.

2

## III.  LAW AND ANALYSIS

### A.  The Court Applied an Erroneous Legal Standard in Declining to Hear Defendant's Motion for Directed Verdict and, Post-Verdict, Denying All Pending Motions Despite Insufficiency of the Evidence Presented by Plaintiff.

At the closing of Plaintiff's case-in-chief, counsel for Defendant made a Motion [for Directed Verdict] given the burden of proof was not satisfied on multiple elements of the Plaintiff's claims.   This Court declined to hear any argument on that Motion at the time and, instead, directed Defendant to proceed with its witnesses in the case. **ECF No. 75, PageID. 1886-87**. Post-verdict, an Order issued denying all pending Motions without Defendant having been presented with any opportunity to argue its Motion under Fed. R. Civ. P. 50(b). **ECF No. 70.** Defendant GCRC submits that it has preserved its right to seek judgment as a matter of law under this rule post-verdict despite the Court not entertaining oral argument.  To the extent this Court disagrees, Defendant GCRC is alternatively entitled to a new Trial under this rule.  *See Braun v. Ultimate Jetcharters, LLC,* 828 F.3d 501, 509 (6th Cir. 2016)*; Rymer v. Davis*, 754 F.2d 198, 199–200 (6th Cir.1985), *vacated on other grounds*.

In ruling upon a motion for a new trial based on the ground that the verdict is against the weight of the evidence, a district judge must "compare the opposing proofs and weigh the evidence.  …[I]t is the duty of the judge to set aside the verdict and grant a new trial, if he is of the opinion that the verdict is against the

KIRK, HUTH, LANGE & BADALAMENTI, P.L.C.

clear weight of the evidence." *TCP Industries, Inc. v. Uniroyal, Inc.,* 661 F.2d 542, 546 (6th Cir. 1981), *quoting, Duncan v. Duncan*, 377 F.2d 49, 52-3 (6th Cir. 1967), *cert. denied*, 389 U.S. 913 (1967). Here, a review of the record establishes conclusively that Jackson did not meet her burden to establish (a) a causal relationship between her termination and any "protected activity" in regard to EEO Plan enforcement; (b) that her opposition activity in regard to EEO Plan enforcement was reasonable; and/or (c) that the reasons given for her termination by Director Daly were mere pretext for discrimination.

### 1. <u>Plaintiff Did Not Meet Her Burden To Establish But-For Causation Between a Protected Activity and Her Termination.</u>

As stated above, the jury concluded that Jackson was terminated "in retaliation for enforcing EEOP requirements." **ECF No. 66, at Question 2**. This did not follow from any evidentiary basis offered at Trial.   In fact, witnesses Branch, Dickerson, Mullin and Latimer had no knowledge at all why Plaintiff was terminated.   Plaintiff had no idea either; testifying the termination came as a complete 'shock.' **ECF No. 74, PageID. 1652-53**.   The only witness with any knowledge was Director Daly who was unequivocal that EEO Plan enforcement was not the reason for Jackson's termination.   He testified that Jackson's termination was due to his "lost confidence in her judgment" and his view that "her communication style was not conducive to building good relations…" **ECF No. 74, PageID. 1842**.   There were two (2) major issues in the month before the

4

termination to which Jackson offered no rebuttal at all.  The first was mid-September when Jackson stood in the way of employee access for Attorney Derderian a second time, after being counseled on the issue in the first 30 days of her employment.  **ECF No. 74, PgageID. 1829-30, 1837-8**.  Daly was frustrated that Jackson conducted herself in the exact same manner with Derderian's employee access as she had been told not to do.  **Ibid**.  The second was 4 days before her termination when Director Daly learned that Jackson had payment withheld from IT vendor Precision given Jackson had no authority to hold vendor payments as HR Director.  **ECF No. 74, PageID. 1836-8**.

Jackson's communication style, failure to follow directives of Director Daly and overstepping with vendor payments are not protected activities.  *Booker v. Brown & Williamson Tobacco Co.,* 879 F.2d 1304, 1313 (6th Cir. 1989).  But-for causation between a protected activity and the termination was therefore not established at Trial.  Defendant was and is entitled to JNOV on this basis.

## 2.  Plaintiff Did Not Meet Her Burden To Establish Pretext.

The reasons given by Director Daly for Jackson's termination are legitimate, non-discriminatory reasons as a matter of law per *Jackson v. Genesee County Road Commission.*, 999 F.3d 333, 350 (6th Cir. 2021). Jackson's burden at Trial was to demonstrate that the reason given for her termination by Director Daly were "mere pretext or 'cover-up' for what was in truth a discriminatory purpose." *Wilkins v.*

*Eaton Corp.*, 790 F.2d 515, 521 (6th Cir. 1986); *Jackson*, 999 F.3d at 348-49. An employer's honestly held belief in the reason it discharged an employee cannot be found pretextual on the basis that it may have been objectively incorrect. *Majewski v. Automatic Data Processing, Inc.,*274 F.3d 1106, 1117 (6th Cir.2001).

A plaintiff can show pretext in three ways: "(1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate the employer's action, or (3) that they were insufficient to motivate the employer's action." *Redlin v. Grosse Pointe Pub. Sch. Sys.,* 921 F.3d 599, 612 (6th Cir. 2019).[1] This factual inquiry goes beyond the proofs required for a prima facie case and mandates "a new level of specificity." *Wilkins*, 790 at 521. In proceeding to this new level of specificity, the plaintiff must prove "by a preponderance of the evidence" that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination. *Reeves v. Sanderson Plumbing*

---

[1] "The first type of showing [] consists of evidence that the proffered bases for the plaintiff's discharge never happened, i.e., that they are 'factually false.' The third showing [] consists of evidence that other employees, particularly employees not in the protected class, were not fired even though they engaged in substantially identical conduct to that which the employer contends motivated its discharge of the plaintiff. The second showing, however, is of an entirely different ilk. There, the plaintiff admits the factual basis underlying the employer's proffered explanation and further admits that such conduct could motivate dismissal. []In such cases, the plaintiff attempts to indict the credibility of his employer's explanation by showing [] that the sheer weight of the circumstantial evidence of discrimination makes it 'more likely than not' that the employer's explanation is a pretext, or coverup." *Manzer v. Diamond Shamrock Chems. Co.,* 29 F.3d 1078, 1084 (6th Cir.1994).

KIRK, HUTH, LANGE & BADALAMENTI, P.L.C.

*Prods., Inc.,* 530 U.S. 133, 143 (2000). This requires "a consideration of the two opposing reasons for discharge to determine whether [the] discharge would not have occurred 'but for defendant's motive to discriminate'…" *Wilkins*, at 522. "There must be evidence of discriminatory purpose, and there must be evidence from which a reasonable jury could conclude that [discrimination] was the *more likely* reason for [plaintiff's] discharge, rather than merely a speculative possibility." (emphasis added). *Id.*, at 523. Where the jury's verdict could be predicated on nothing but speculation or a dislike of the manager's business judgment, the verdict must be set aside. *Id.*

Here, Plaintiff argued no basis-in-fact from *Redlin* by asserting that she, at all times, was doing a "good job" at HR Director. **ECF No. 74, PageID. 1651, 1657**. In doing so, Plaintiff presented no evidence of pretext beyond her mere speculation. **ECF No. 74, PageID. 1651-52, 1654-57, 1762**. In fact, Plaintiff stipulated that she would be producing no new evidence at the time of Trial. **See ECF 57.** While Jackson's mere speculation was sufficient to avoid summary judgment (on appeal), mere speculation is insufficient to meet plaintiff's burden on pretext at the time of Trial. *See, Haynes v. Northrop Grumman Mission Sys.,* No. 3:05CV303, 2007 WL 2688277, at *8 (S.D. Ohio Sept. 11, 2007) ("We hold that, in order to make this type of rebuttal showing, the plaintiff may not rely simply upon his *prima facie* evidence but must, instead, introduce additional evidence of

age discrimination."). The failure to present evidence "which demonstrates that the employer did not 'honestly believe' in the proffered non-discriminatory reason for its adverse employment action" is dispositive. *See, Braithwaite v. Timken Company,* 258 F.3d 488, 493 (6th Cir. 2001); *Jones v. St. Jude Med. S.C., Inc.,* 823 F. Supp. 2d 699, 726 (S.D. Ohio 2011), *aff'd,* 504 F. App'x 473 (6th Cir. 2012). JNOV is therefore required.

Going one step further, under *Wilkins*, the evidence that supported Director Daly's legitimate, non-discriminatory proffered reason for Jackson's termination was in abundance. Here, Jackson herself testified that the EEOP policy she was charged with enforcing predated her employment at GCRC and she enforced it as-written before her employment. **ECF No. 73, PageID. 1567-1580, 1586.** In this regard, every witness testified that Mr. Pitts before Jackson, and Ms. Poplar after Jackson, enforced the same EEO Plan requirements. **ECF No. 73, PageID. 1528-9 (Branch); ECF No. 74, PageID. 1840-2 (Daly); ECF No. 75, PageID. 1893-4 (Mullin).** Mr. Daly took no employment action at all against either Pitts or Poplar. **Ibid**. It was further undisputed at Trial that Director Daly never raised or had any concerns about Jackson's enforcement of the EEO Policy, except as to her communication style. **ECF No.74, PageID. 1724-36, 1747-8 (Jackson); See also, Stipulated Fact #21, at ECF No. 75 PageID. 1920; ECF No. 74, PageID. 1814 (Daly).**

8

Indeed, the only difference between Jackson's work on EEO Plans versus Poplar and Pitts was that under Jackson (a) all EEO Plan submissions had to be electronic; and (b) vendors could not speak to anyone at GCRC except for her regarding EEO Plan submissions.  **ECF No. 73, PageID. 1581-4 (Jackson); Trial Exhibit 08, at ECF No. 59, PageID. 1004-5; ECF 74, Pg ID 1624, 1730.**[2]  It was Jackson's monolithic pursuit of these inconsequential changes that led to conflict, not any opposition to discrimination.  Indeed, Director Branch recalled "vendors did not like the way that [Jackson] talked to them" and being told Jackson was "disrespectful" toward these vendors. **ECF No. 73, PageID. 1526-7, 1534-5 (Branch)**. Ms. Mullin testified she overheard Jackson direct vendors that they could not use her first name but had to refer to her as "Director Jackson." **ECF No. 75, PageID. 1890-2**.  In doing so, Jackson rejected EEO Plan submissions where her first name was used or if anyone else at GCRC was copied on the communication.  **See ECF No. 74, PageID. 1627-1636, 1640-2 (Jackson); ECF No. 75, PageID. 1892-3 (Mullin); see also, Trial Exhibit 18, at ECF No. 59, PageID. 1037-8.** The rejection of otherwise proper EEO Plans for these silly reasons, along with the refusal to return vendor phone calls to keep the EEO process moving, prompted vendors to reach out to the Engineering Department.

[2] As stated in the preceding sections, no jury finding was required on whether this constituted "reasonable opposition," or opposition to discrimination at all, so as to be considered protected activity under *Booker, supra,* 879 F.2d at 1313 (6th Cir. 1989).

9

**ECF No. 74, PageID. 1625-29, 1631-32**.  This led to internal conflict between Jackson and co-worker at GCRC. **Ibid; ECF No. 73, PageID. 1526-7 (Branch)**. Though Director Daly supported the enforcement of Jackson's EEO Policy, he asked Jackson to return vendor phone calls and emails more timely [**See Trial Exhibits 12, 18, 24, at ECF No. 59, PageID. 1018-22, 1037-8, 1056-8**] and to "soften her tone" when discussing vendor complaints with engineering [**ECF No. 74, PageID. 1643 (Jackson)**].

Director Daly testified that in the months before Jackson was terminated these "same complaints" about Jackson's abrasive communication style were coming from "everyone," "repeatedly" including three (3) Board of Commissioners, GCRC Attorney Derderian, union representatives, other GCRC department heads and at least one engineer.  **See also, ECF No. 74, PageID. 1826-34**.  In addition, Jackson stipulated that she was counseled three (3) times about her communication style toward co-workers and vendors entirely independent of any EEO Plan enforcement.  **Stipulated Fact #19, at ECF No. 75, PageID. 1920; ECF No. 74, PageID. 1658 (Jackson)**.  Director Daly confirmed this and, further, that:

> *"The only concerns I expressed to her were dealing with the communication and the production of the EEOC… The EEOC as a final product, once it was there, was – was, I believe, an acceptable product. She -- as I indicated and said in my statement, she did a better job at it than I did. The problem was*

10

*the antagonism that was being caused, not only over the EEOC, but other problems as well."* **ECF No. 74, PageID. 1814-5.**

Also supporting Director Daly's legitimate, non-discriminatory reason for Jackson's termination was Jackson's own testimony about her overstep into the billing by IT vendor Precision. **See Trial Exhibit 29, at ECF No. 59, PageID. 1070-1; ECF No. 74, PageID. 1644-49**. Jackson admitted she had no authority to hold vendor payments or demand an accounting from an IT vendor. **ECF No. 74 PageID. 1649-50**. In fact, Jackson testified that she did not realize her actions resulted in the withholding of payment to Precision. **Ibid**. But **Trial Exhibit 29** shows Jackson demanding an accounting from Precision (without any relationship to any EEO Plan issue). When Precision's CEO called Director Daly about non-payment, Director Daly was shocked to find that Precision's payment had been held by Jackson. **ECF No. 74, PageID. 1836-8.** At Trial, Jackson adamantly clarified that this dispute with Precision had nothing to do with the EEO Plan as Precision was in full compliance with submission requirements already. **ECF No. 74, PageID. 1644; ECF No. 75, PageID. 1904-05, 1956.**

There was simply no evidence at all presented to establish the reasons for termination given by Director Daly were mere pretext. The evidence actually supported, over and over, the reasons given. Plaintiff clearly failed to meet her burden of proof on the pretext requirement of her retaliation theories and entry of JNOV in favor of Defendant GCRC is required.

11

### B.  The Court Applied an Erroneous Legal Standard to the Jury Instructions and the Jury Verdict Form.

A jury verdict will be set aside, on motion for judgment as a matter of law or a new trial based on erroneous jury instructions, if the movant can establish that those instructions were legally erroneous, and that the errors had prejudicial effect. *Therasense, Inc. v. Becton, Dickinson and Co*., 593 F.3d 1325 (Fed. Cir. 2010). The critical inquiry with regard to jury instructions is "whether the instructions as a whole provide the jury with sufficient guidance concerning the issues to be tried." *Fryman v. Federal Crop Ins. Corp.,* 936 F.2d 244, 251 (6th Cir.1991).

Here, over Defendant's objection, this Court instructed the jury that Plaintiff Jackson "was engaged in protected activity" broadly as to all duties she engaged in as Human Resources ("HR") Director.  More specifically, Plaintiff's counsel had advocated for this instruction by suggesting that the Court of Appeals held already that Plaintiff was engaged in protected activity as a matter of law when (a) she investigated personnel complaints at GCRC and (b) was involved with vendor EEO Plan compliance. This Court agreed and the jury was not instructed on the standard for Plaintiff to prove she was engaged in protected activity.  Likewise, there was no question on the Jury Verdict Form to ask jurors whether Plaintiff had met the evidentiary burden required to establish a prima facie case of retaliation in the event her termination was connected to the EEO Plan work she was doing – which were actually open questions of fact to be decided by this jury according to

12

KIRK, HUTH, LANGE & BADALAMENTI, P.L.C.

the appeals Court ruling. *See, Jackson v. Genesee Cty Rd Comm'n.*, 999 F.3d 333, 351 (6th Cir. 2021).

Consequently, this Court adopted a Jury Verdict Form that asked jurors first whether the protected activity of investigating personnel complaints resulted in Jackson's termination.  Jurors answered "No."  Second, jurors were asked whether the purportedly 'protected activity' of enforcing EEO Plan compliance resulted in Jackson's termination.  Jurors answered "Yes."  These two causation questions had to both be answered in the negative for Defendant to *avoid liability*, instead of Plaintiff having to meet her burden on protected activity and/or the question of pretext as preliminary matters.  This order of questions confused jurors by misplacing the burden of proof.  Finally, the errors resulting from all this is plainly evidenced by the jury's response to Question 4 on the Verdict Form which asked if a legitimate, non-discriminatory reason was proffered for Jackson's termination by GCRC Managing Director Daly.  This question was already determined as a matter of law by the appeals Court but the jury was not so instructed.  **Indeed, the jury reached the opposite conclusion in clear conflict with the appeals Court and against the weight of the evidence.**  This confirms the presence of obvious juror confusion, which resulted in prejudice and unfairness to Defendant GCRC.

1. **The Jury Instructions Improperly and Confusingly Instructed Jurors that Plaintiff Was Engaged in Protected Activity Regarding EEO Plan Communications with Vendors.**

13

It is plain error to allow a "jury to deliberate under an incorrect legal standard that affect[s] the core issue of the case and result[s] in prejudice." *Reynolds v. Green,* 184 F.3d 589, 594 (6th Cir.1999).  In this case, the Court of Appeals specifically set forth the standard for liability in this case, as follows:

> The plaintiff must demonstrate four elements to establish a prima facie case of retaliation under both Title VII and ELCRA: (1) she engaged in protected activity, (2) the defendant was aware of the protected activity, (3) "the defendant took an action that was 'materially adverse' to the plaintiff," and (4) there is a causal connection between the plaintiff's protected activity and the defendant's adverse action []
>
> …Under *McDonnell Douglas*, if the plaintiff establishes her prima facie case then the burden shifts to the defendant to demonstrate some "legitimate, nondiscriminatory reason" for its action. *McDonnell Douglas*, 411 U.S. at 802. If the defendant produces such a reason, the burden shifts back to the plaintiff to show that the proffered reason was a mere pretext for discrimination. *Id.* at 804. The ultimate burden, however, remains with the plaintiff to convince the factfinder that the defendant retaliated against her for engaging in protected activity. *Jackson v. Genesee Cty Rd Comm'n*, 999 F.3d 333, 343-344 (6th Cir., 2021).

The appeals Court went on to recognize that Plaintiff could state a legitimate claim under the opposition clause of Title VII and the ELCRA in connection with performance of her usual job duties.  *Id.*, at 345-346.  However, the appeals court did **not** rule as a matter of law that Plaintiff was, indeed, engaged in protected activity.  To wit, the appeals Court merely held:

> When viewing the facts in the light most favorable to Jackson, *a reasonable juror could conclude that she engaged in*

14

KIRK, HUTH, LANGE & BADALAMENTI, P.L.C.

> *protected activity*. To bring a successful claim under the opposition clause, Jackson must allege facts that she opposed unlawful GCRC practices in a reasonable manner and with a reasonable and good faith belief that the practices violated Title VII. *Johnson*, 215 F.3d at 579. Jackson argues that she engaged in two types of such protected activity: investigating the discrimination complaints against Bennett and Williams and ensuring EEO compliance. *Id.*, at 346-347.

It went on to hold that several of the personnel complaints at issue in Plaintiff's case were *not* protected activity. The only personnel complaint open on remand was the Branch investigation because Jackson testified the complaint lodged was that Bennet was discriminating against Branch on the basis of race. *Id.*, at 347. On this *single* personnel complaint investigation, the appeals Court held only the allegations pled by Jackson "to oppose unlawful discrimination perpetuated by Bennett against Branch are sufficient to establish protected activity." *Id*. Plaintiff argued this was an affirmative finding and this Court agreed.

However, the instructions to the jury at Trial failed to explain this extremely limited determination of "protected activity." The jury was instructed instead that *everything* Jackson did as the Human Resources Director constituted protected activity. **ECF No. 69, PageID.1384-86; ECF No. 75, PageID.1906-09, 1934-36, 1944-49, 1966, 1976-7**. Against this, the jury ultimately concluded that Jackson was <u>not</u> terminated as a result of any personnel complaint investigation including the Branch complaint referenced by the appeals Court. **ECF No. 66, PageID.**

**1355, at Question 1**.  Then, without having to determine *if* anything else Jackson did was in fact "protected activity," the jury found liability.

The finding is problematic because Plaintiff was required to demonstrate that a "protected activity" was a but-for cause of the adverse action by the employer. *University of Texas Southwestern Medical Center v. Nassar*, 570 U.S. 338, 360 (2013); *See also Seoane–Vazquez v. Ohio State University*, 577 Fed.Appx. 418, 428 (6th Cir.2014).  Indeed, the appellate Court was explicit in this case that:

> *Jackson must demonstrate that there was a causal connection between her protected activity and the adverse employment action taken against her, meaning that but-for her protected activity, her employment would not have been terminated. Jackson*, 999 F.3d at 348-49.

However, the jury concluded that Plaintiff was terminated because of her involvement in the EEO Plans.  **Ibid., at Question 2.**  Before doing so, the jury was not asked whether that involvement in the EEO Plans was actually "protected activity." This was plainly in error where the appellate Court held merely that: "a reasonable juror *could find that Jackson's conduct as EEO Officer was protected activity*." (emphasis added). *Jackson*, 999 F.3d at 347.  In fact, the appeals Court reasoned:

> According to Jackson, when she began her employment, GCRC directors were colluding and communicating with vendors before the vendors' EEOPs were approved and contractors with expired EEOPs were permitted to do business with GCRC. To

KIRK, HUTH, LANGE & BADALAMENTI, P.L.C.

correct these alleged problems, Jackson centralized EEOP communications and ensured all vendors had a current EEOP on file. Jackson also objected at a GCRC board meeting when Peivandi called for a vote on a contract from a vendor that had not completed its EEOP. **Jackson's actions could reasonably be viewed as steps to ensure there was no discrimination in hiring both within GCRC and among its vendors, and, thus, were protected activity under Title VII.** (emphasis added). *Id.*

This ruling was not adopted at Trial where the Jury Instructions categorically pronounced in error that *all* of Jackson's work at the GCRC was protected activity. Instead, Question 2 in the Jury Verdict Form asked if Jackson's conduct in enforcing the EEO Plans was the cause for her termination without first establishing that the specific conduct at issue was, in fact, protected activity. In other words, the jury was asked why Jackson was fired but not required to conclude that Jackson's nastiness toward vendors submitting EEO Plans and withholding of Precision's check were actually the product of "reasonable steps to ensure there was no discrimination in hiring both with GCRC and among its vendors" as would be required for this conduct to be protected activity.

Further, Jackson had to express this "opposition in a reasonable manner" to qualify for protection. *Jackson,* 999 F.3d at 345. Yet, at Trial the jury was not asked to opine on whether Jackson's conduct, if it was indeed protected activity, constituted reasonable opposition.

These errors are in direct conflict with the appellate ruling and also run afoul of the established rule from *Booker v. Brown & Williamson Tobacco Co.,* 879 F.2d

17

1304, 1313 (6th Cir. 1989), which holds that an employee is not protected under Title VII or the ELCRA when she violates legitimate rules and orders of her employer, disrupts the employment environment, or interferes with the attainment of her employer's goals. *Id.,* at 1312.  To be sure, when counsel for the GCRC covered the legal standard of *Booker* in closing argument, Plaintiff's counsel <u>*twice*</u> objected[3] and this Court followed up by discounting GCRC's closing argument telling jurors:

> Ladies and gentlemen, I made a mistake in that paragraph, and I was going to tell you about the part I changed later. This is not the part I changed though.  **ECF 75, PageID 1966**.

Then, after closing arguments and Defendant had no further opportunity to address jurors, this Court followed up by reading a newly modified portion of the Jury Instructions (over objection[4] from counsel for GCRC), as follows:

> Number one, we were talking about what we said at the sidebar. I made a mistake when I was doing this, and it should have said, on page 22, when I was talking about the elements by preponderance, I said that the first element that Plaintiff claimed to have engaged in protected activity. **I should have said that she did engage in protected activity. So it was one**

---

[3] Fed. R. Civ. P. Rule 51 provides the precise manner in which a party may object to proposed jury instructions at subsec. (b)(2): "[t]he Court must give the parties an opportunity to object on the record **and out of the jury's hearing before the instructions and arguments are delivered**." (emphasis added). *See also*, Fed. R. Civ. P. Rule 51(c)(2).

[4] Objection by GCRC to these instructions were adequately preserved. Fed. R. Civ. P. Rule 51(b)(2), 51(c); **ECF No. 75, PageID. 1906-09, 1934-36, 1944-49**. *See, Woodbridge v. Dahlberg*, 954 F.2d 1231, 1237 (6th Cir.1992).

KIRK, HUTH, LANGE & BADALAMENTI, P.L.C.

KIRK, HUTH, LANGE & BADALAMENTI, P.L.C.

**word, but one important word.** So, and you'll see it corrected in there. **Trial Transcript at ECF No. 75, PageID. 1976-7.**

This instruction is inconsistent with the narrow finding by the appeals court that **_only_** Plaintiff's investigation of the personnel complaint **_by Branch_** constituted protected activity. Moreover, the reading was unfair to Defendant given that any juror hearing this "important word" added at the end of all other instructions is highly suggestive of a view by the Court that the Plaintiff's employment at GCRC should be viewed as "protected."

Adding to this, the Jury Verdict Form at Question 2 follows up by asking specifically if Plaintiff Jackson was terminated as a result of her communications with vendors regarding their EEO Plan submissions. The jury answered "Yes" to this Question 2. There really was no other option either given Managing Director Daly testified that Jackson's nastiness toward GCRC vendors and withholding of Precision's check[5] were, indeed, the reasons for her termination. **ECF No.74, PageID. 1837-38, 1842**. The "Yes" to Question 2, however, resulted in liability for GCRC. This liability attached irrespective of whether Jackson's nastiness and withholding of vendor payments was, in fact, opposition to discrimination so as to

---

[5] Importantly Plaintiff testified, as her counsel reiterated in closing argument, that Precision's check was not withheld due to any issues with EEO Plan submission but because Plaintiff Jackson wanted to see more detailed billing from Precision. **(Trial Exhibit 29, at ECF No. 59, PageID. 1070-71); ECF No. 74, PageID. 1644; ECF No. 75, PageID. 1904-05, 1956**. In fact, the Court found this testimony was already put forth when Plaintiff requested an opportunity to present this exact rebuttal testimony. **ECF No. 75, PageID. 1904-05**.

be protected under Title VII or the ELCRA or just plain nastiness and overstepping. This is obviously improper under *Booker*. Accordingly, a new Trial is required.

**2. The Jury Verdict Form Utilized Resulted in a Direct Inconsistency with the Court of Appeals Ruling in this Matter and Imposed an Improper Legal Standard Given the Burden-Shifting Framework Required in this Retaliation Case.**

If the plaintiff establishes a *prima facie* case[6] of retaliation, the burden of production shifts to the defendant to articulate a non-discriminatory reason for its adverse employment action. *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 583 (6th Cir.1992); *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 254-55 (1981) (the establishment of a prima facie case in effect creates a presumption that the employer unlawfully discriminated against the employee; therefore, the burden that shifts to the defendant is to rebut the presumption of discrimination by producing evidence for legitimate, nondiscriminatory reason for its adverse employment action.). When done, the burden shifts back to plaintiff to "demonstrate by a preponderance of the evidence that the defendant's proffered reason was a pretext for [] discrimination. *See, Barrow v. City of Cleveland*, 773 F. App'x 254, 261 (6th Cir. 2019); *Imwalle v. Reliance Medical Products, Inc.*, 515 F.3d 531, 544 (6th Cir. 2008). While the appeals Court left the question of pretext

---

[6] The Supreme Court in *Burdine* explains, "the prima facie case serves an important function in the litigation: it eliminates the most common nondiscriminatory reasons for the plaintiff's rejection." *Burdine*, at 254.

for the jury, it nevertheless acknowledged that the factual record, taken together, *could lead a jury to find that GCRC in fact fired Jackson because of her abrasive and offensive communication style. Id., at p. 18*.

Here, however, the Jury Verdict Form did not permit such a finding.

First, the reason given for Jackson's termination by Managing Director Daly were legitimate and non-discriminatory as determined already by the appeals court. *Jackson*, 999 F.3d at 350. Yet, the Jury Instructions did not convey this to the jurors. To the contrary, this Court adopted Plaintiff's proposed Jury Verdict question that asked at Question 4 *whether* GCRC had presented a "legitimate non-discriminatory reason" for Jackson's termination. **ECF No. 75, PageID. 1906-09, 1934-36, 1944-49**; **ECF No. 66, PageID. 1356**. Alarmingly, the jury answered "No" to this Question in direct conflict with the Court of Appeals ruling. **Ibid**. This evidences the plain error in the standards and instructions provided to the jury.

Second, it is only upon a finding in plaintiff's favor on this question of pretext that a jury can get to the question of whether but-for causation exists between the protected opposition activity and the adverse employment action. *See, Hall v. State Farm Ins. Co.*, 1 Fed.Appx. 438, 442-443 (6th Cir. 2001); *Burdine, supra*, at 256. In this case specifically the appellate Court was explicit regarding this burden upon Plaintiff, holding:

21

> *Jackson must demonstrate that there was a causal connection between her protected activity and the adverse employment action taken against her, meaning that but-for her protected activity, her employment would not have been terminated. Jackson*, 999 F.3d at 348-49.

However, the Jury Verdict form used asked about causation at Questions 1 and 2 *before* the Jury was asked whether Plaintiff met <u>her burden</u> to establish pretext.

In this regard, "[a] plaintiff will usually demonstrate pretext by showing that the employer's stated reason for the adverse employment action either (1) has no basis in fact, (2) was not the actual reason, or (3) is insufficient to explain the employer's action. However, the plaintiff may also demonstrate pretext by offering evidence which challenges the reasonableness of the employer's decision 'to the extent that such an inquiry sheds light on whether the employer's proffered reason for the employment action was its actual motivation." *Risch v. Royal Oak Police Dep't*, 581 F.3d 383, 391 (6th Cir. 2009).

Here, jurors were not asked about whether Plaintiff met her burden to establish pretext until Question 3 of the Jury Verdict Form. **ECF No. 66**. This means that jurors had already determined via Questions 1 and 2 that GCRC was liable *irrespective* of whether plaintiff met her essential burden on pretext. This is clear error since a plaintiff cannot prevail in a retaliation case where no finding is made on the question of pretext. *See King v. William Beaumont Hosp.,* No. 10-13623, 2014 WL 1260382, at *3 (E.D. Mich. Mar. 27, 2014). This is even more

KIRK, HUTH, LANGE & BADALAMENTI, P.L.C.

problematic given the express burden imposed upon Plaintiff by the appellate ruling regarding pretext. Jurors response to Question 4 – a finding directly contrary to the appeals court ruling that the reasons given by Director Daly are, in fact, legitimate and non-discriminatory – is clear evidence of the resulting jury confusion. Moreover, this error renders the Trial unfair to Defendant GCRC given that the Jury Verdict Form effectively eliminated Jackson's burden to establish the essential elements of her claim and, more specifically, that the reasons given by Director Daly were mere pretext for discrimination.

A new trial is required given these errors in the Jury Instructions and the confusion and error in the Jury Verdict Form.

## C. A New Trial is Required Given Plaintiff's Demand for and Award of Non-Economic Damages Contrary to ECF 54.

Damage awards must be reasonably based on or derived from the evidence in the record. *Jackson v. City of Cookeville,* 31 F.3d 1354, 1359 (6th Cir.1994). A court cannot use evidence the jury did not have before it to alter a damage award, absent some compelling reason or justification. *Coleman v. State of Tenn.,* 998 F. Supp. 840, 849 (W.D. Tenn. 1998), *citing* Fed. R. Civ. P. 59. Separately, remittitur is justified if the jury verdict is "excessive," i.e, if the amount if greater than "the highest amount the evidence will support. In this case, the great weight of the evidence did not support a finding of economic loss totaling $93,000.00.

In this case, the jury was asked on the Jury Verdict Form to identify the "damages" sustained by Plaintiff. However, at **ECF 54, PageID. 926**,[7] the Plaintiff stipulated to an order in limine precluding any claim for non-economic damages. Yet, Plaintiff offered no actual calculation of her economic-only damages and failed to offset for other income and unemployment benefits received. In doing so, she testified regarding her $93,000 demand as follows:

> *I'm asking for a year's salary as the -- I'm looking for the correct word. As the damage that was done to me as a result of how I was treated by the Road Commission.*

**ECF No. 74, PageID. 1755-6**. This prayer clearly seeks non-economic damages constituting in conflict with the orders entered in this case. The jury awarded the requested $93,000 to compensate for "how [plaintiff] was treated" without regard to the limitation to only her actual sustained wage loss.  This Court could remit the award if Plaintiff had actually separated her wage-loss in any way at Trial. However, Plaintiff failed to do so. Consequently, Plaintiff cannot now offer additional evidence by which to calculate out her actual economic-only loss. As

---

[7] Defendants originally submitted a mutually agreed upon Proposed Stipulation and Order for entry on 1-29-23 under L.R.58.1, **at ECF No. 61**, due to Plaintiff's Counsel's lack of response to Defendant's request for consent of signature. At the beginning of trial in this matter on 1/31/23, Plaintiff's counsel stipulated to the submitted Proposed Order, which was noted on the record **at ECF No. 72, PageID. 1463**. In light of Plaintiff's stipulation, Defendant's withdrew the Notice for Entry, **at ECF No. 65**. However, as of this filing, the docket does not reflect an entry of this Proposed Order.

KIRK, HUTH, LANGE & BADALAMENTI, P.L.C.

such, Defendant GCRC is entitled to a new trial at which Plaintiff will be limited to a demand for her sustained wage-loss only, instead of speculative "damages."

### IV.   <u>CONCLUSION AND RELIEF REQUESTED</u>

Defendant GCRC was entitled to a Directed Verdict and/or is entitled to judgment notwithstanding the verdict now given that Plaintiff offered no evidence at all (a) to meet her burden on the causation element between a protected EEO Plan activity and her termination; and/or (b) to establish the legitimate, non-discriminatory reasons given by Director Daly for her termination were pretext.

Alternatively, errors in the legal standard utilized in the Jury Instructions, including the instruction and late amended instruction on "protected activity," and a confusing Jury Verdict Form that did not ensure Plaintiff met the essential elements of her claim before liability could be established necessitate a new Trial. Likewise, a new Trial is proper given that Plaintiff sought "damages" from the jury when orders in the case limited her recovery to actual wage-loss only.

<div style="margin-left:40%">

Respectfully Submitted,
KIRK, HUTH, LANGE & BADALAMENTI, PLC


s/Raechel M. Badalamenti
RAECHEL M. BADALAMENTI (P64361)
Attorneys for Defendant
19500 Hall Road, Ste. 100
Clinton Twp., MI 48038
586-412-4900
rbadalamenti@kirkhuthlaw.com

</div>

Dated:  February 28, 2023

KIRK, HUTH, LANGE & BADALAMENTI, P.L.C.

25

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF MICHIGAN

MAKINI JACKSON,

       Plaintiff,

vs.

GENESEE COUNTY ROAD COMMISSION,

       Defendants.

Case No. 2:18-cv-11199-BAF-JJCG

Hon. Bernard A. Friedman

Mag. Jonathan J.C. Grey

---

| LEWIS & MUNDAY, P.C. | KIRK, HUTH, LANGE & BADALAMENTI, PLC |
|---|---|
| By: DAVID J. CROSS (P42683) | By: RAECHEL M. BADALAMENTI (P64361) |
|     RONDA T. TRUVILLION (P70767) |     VICTORIA L. PADULA (P85766) |
| Attorneys for Plaintiff | Attorneys for Defendant |
| 535 Griswold, Ste. 2300 | 19500 Hall Road, Ste. 100 |
| Detroit, MI 48226 | Clinton Twp., MI 48038 |
| (313) 961-2550 | 586-412-4900 |
| dcross@lewismunday.com | rbadalamenti@kirkhuthlaw.com |
| rtate@lewismunday.com | vpadula@kirkhuthlaw.com |

---

## NOTICE OF HEARING

Defendant hereby requests oral argument on the preceding MOTION FOR JUDGMENT AS A MATTER OF LAW OR, ALTERNATIVELY, FOR A NEW TRIAL at a date and time to be determined by the Court.

      Respectfully Submitted,
      KIRK, HUTH, LANGE & BADALAMENTI, PLC


      s/Raechel M. Badalamenti
      RAECHEL M. BADALAMENTI (P64361)
      Attorneys for Defendant
      19500 Hall Road, Ste. 100
      Clinton Twp., MI 48038
      586-412-4900

Dated: February 28, 2023      rbadalamenti@kirkhuthlaw.com

1

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF MICHIGAN

MAKINI JACKSON,

                                    Case No. 2:18-cv-11199-BAF-JJCG

      Plaintiff,                 Hon. Bernard A. Friedman

vs.                            Mag. Jonathan J.C. Grey

GENESEE COUNTY ROAD COMMISSION,

      Defendants.

---

| LEWIS & MUNDAY, P.C. | KIRK, HUTH, LANGE & BADALAMENTI, PLC |
|---|---|
| By:  DAVID J. CROSS (P42683) | By:   RAECHEL M. BADALAMENTI (P64361) |
|       RONDA T. TRUVILLION (P70767) |       VICTORIA L. PADULA (P85766) |
| Attorneys for Plaintiff | Attorneys for Defendant |
| 535 Griswold, Ste. 2300 | 19500 Hall Road, Ste. 100 |
| Detroit, MI  48226 | Clinton Twp., MI 48038 |
| (313) 961-2550 | 586-412-4900 |
| dcross@lewismunday.com | rbadalamenti@kirkhuthlaw.com |
| rtate@lewismunday.com | vpadula@kirkhuthlaw.com |

---

## CERTIFICATE OF SERVICE

I hereby certify that on February 28, 2023, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following: DAVID J. CROSS (P42683) and RONDA T. TRUVILLION (P70767).


                        s/Victoria L. Padula
                        VICTORIA L. PADULA (P85766)
                        vpadula@kirkhuthlaw.com
                        19500 Hall Road, Suite 100
                        Clinton Township, MI  48038
                        (586) 412-4900