UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MAKINI JACKSON,

      Plaintiff,

                           Case No. 18-cv-11199
                           HON. BERNARD A. FRIEDMAN

vs.

GENESEE COUNTY
ROAD COMMISSION,

      Defendant.

_____/

## OPINION AND ORDER GRANTING IN PART DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW OR FOR A NEW TRIAL

      This matter is before the Court on a motion for judgment as a matter of law or, alternatively, for a new trial filed by defendant Genesee County Road Commission ("GCRC" or "the Road Commission"). (ECF No. 76). Plaintiff Makini Jackson has filed a late response. (ECF No. 78). The Road Commission has not filed a reply and the time to do so has passed. The Court does not believe a hearing is necessary and shall decide the motion without oral argument. E.D. Mich. LR 7.1(f). For the reasons that follow, the Court denies the motion for judgment as a matter of law and grants the motion for a new trial pursuant to Federal Rules of Civil Procedure ("FRCP" or "Rule") 50 and 59. FRCP 50(b)(3), (c); FRCP 59(a)(1)(A).

I.   Background

Plaintiff Makini Jackson filed her complaint against the Genesee County Road Commission in April 2018 alleging retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and Michigan's Elliott-Larsen Civil Rights Act ("ELCRA") as well as wrongful termination and retaliation in violation of Michigan's public policy.  (ECF No. 1).  Specifically Jackson, an African-American woman, alleged that she was terminated from her employment as the human resources director and EEO [Equal Employment Opportunity] officer of the Road Commission for investigating discrimination complaints from African American and female employees and for her handling of EEO Plan submissions. (*See id.*, PageID.3-5).[1]

On March 23, 2020, this Court granted GCRC's motion for summary judgment.  (ECF No. 21).  The Court found that because Jackson had not demonstrated that she was engaged in protected activity and had failed to show a causal connection between any protected activity and defendant's decision to terminate her, her Title VII and ELCRA claims must fail.  (*Id.*, PageID.721). Further, the Court found that even if Jackson had established a prima facie retaliation claim, the Road Commission had offered legitimate, nondiscriminatory

---

[1] Both this Court and the Sixth Circuit have provided detailed summaries of the pre-trial evidence on the record and the Court will not repeat that information here. (ECF Nos. 21, 26).

reasons for her termination but Jackson had not carried her burden to show that the proffered reasons were a mere pretext for retaliation.  (*Id.*, PageID.721-23).  With regard to her claim of wrongful termination and retaliation in violation of Michigan's public policy, the Court again found that Jackson had not shown that her enforcement of EEO Plan requirements played any role in her discharge and further that Jackson had not sufficiently challenged GCRC's legitimate, nonretaliatory explanation for her termination.  (*Id.*, PageID.725).

Jackson appealed, and the Sixth Circuit reversed, finding that Jackson had engaged in protected activity and that there remained a genuine factual dispute as to causation.  (ECF No. 26, PageID.759).  Specifically, the Sixth Circuit held that although there was "insufficient evidence to show that Jackson's investigation into Ivey's and McClane's complaints of discrimination amounted to protected activity," by contrast "Jackson's investigation of Branch's complaints against Bennet, however, was protected activity."  (*Id.*, PageID.770).  The Sixth Circuit continued: "a reasonable juror could find that Jackson's conduct as an EEO Officer was protected activity."  (*Id.* PageID.771).  With regard to the ELCRA, the Sixth Circuit held that "Jackson has not met her burden of showing that her conduct amounts to protected activity under the participation clause of the ELCRA."  (*Id.*, PageID.772).  As for causation, the Sixth Circuit held that "[a] reasonable juror could find that Jackson has established a prima facie case of causation through

circumstantial evidence including the temporal proximity between Jackson's protected activity and termination and other evidence connecting Jackson's actions and termination." (*Id.*, PageID.774). The Sixth Circuit acknowledged, under the burden-shifting framework of *McDonnell-Douglas v. Green*, 411 U.S. 792, 802 (1973), that GCRC met its burden to proffer a legitimate, nondiscriminatory reason for Jackson's termination, but nevertheless held that "[a] reasonable juror could conclude that GCRC's proffered reason for firing Jackson was pretextual." (*Id.*, PageID,775-76).

The Sixth Circuit concluded: "Jackson's investigations into Branch's complaints that Bennett was discriminating against him because of his race and Jackson's enforcement of EEOP policies were protected activities . . . [And] there remains a genuine factual dispute whether GCRC's proffered nondiscriminatory reason for Jackson's termination was pretextual." (*Id.*, PageID.778). The appellate court likewise found that there remained a genuine factual dispute as to causation on Jackson's claim that she was terminated in violation of Michigan public policy. (*Id.*, PageID.779).

The case proceeded to trial. The jury found in favor of Jackson on her claim that she was terminated in retaliation for enforcing EEOP requirements but concluded that she had not shown she was terminated in retaliation for investigating other employees' claims of discrimination. (ECF No. 66).

4

Consistent with the jury's verdict, the Court entered judgment against the Road Commission in the amount of $93,000.  (*Id.*); (ECF No. 71).

GCRC has now filed the instant motion for judgment as a matter of law or, alternatively, for a new trial.  (ECF No. 76).  The Road Commission states that it "was not permitted to argue its Motion for Directed Verdict given the insufficiency of evidence presented in Plaintiff's case-in-chief but now seeks judgment notwithstanding the verdict on the same basis under Fed. R. Civ. P. 50(b)."  (*Id.*, PageID.1996).[2]  "Additionally, or alternatively, pursuant to Fed. R. Civ. P. 59(a)(1), Defendant requests a new trial in this matter given irregularities at Trial which rendered the proceedings unfair to Defendant GCRC."  (*Id.*).  Specifically, GCRC urges that the Court and jury instructions adopted a standard inconsistent with the Sixth Circuit's decision as to whether Jackson was engaged in a protected activity, that the jury verdict form did not require Jackson to establish the essential elements of her claim before liability was determined, and that the reading of a clarification of law to the jury after closing arguments was highly suggestive of the outcome jurors ought to reach.  (*Id.*).  GCRC also urges that "[r]emittitur or a new trial is further required given that Plaintiff demanded non-economic loss contrary

---

[2] Rule 50 is directed to motions for judgment as a matter of law.  "The former terminology, 'directed verdict' and 'judgment notwithstanding the verdict,' was replaced in 1991."  9B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2521 (3d ed. April 2022 Update).  The Court will use the updated terminology.

to established orders." (*Id.*, PageID.1997).  Jackson filed a response in opposition to the motion.  (ECF No. 78).  Jackson urges that "[t]here is no record that . . . Judge Friedman denied a specific request from Defendant's counsel to argue a motion for directed verdict." (*Id.*, PageID.2035).  Further, Jackson "denies that there were any irregularities at trial that rendered the proceedings unfair to Defendant" and "denies that remittitur or a new trial is required in this case." (*Id.*, PageID.2036).

## II.   Legal Standard

### A. *Rule 50 – Judgment as a Matter of Law*

FRCP 50 states, in relevant part:

(a) Judgment as a Matter of Law.
  (1) *In General.* If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may:
    (A) resolve the issue against the party; and
    (B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.
  (2) *Motion.* A motion for judgment as a matter of law may be made at any time before the case is submitted to the jury. The motion must specify the judgment sought and the law and facts that entitle the movant to the judgment.
(b) Renewing the Motion After Trial; Alternative Motion for a New Trial. If the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. No later than 28 days after the entry of judgment--or if the motion addresses a jury issue not decided by a

6

verdict, no later than 28 days after the jury was discharged--the movant may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59. In ruling on the renewed motion, the court may:

>    (1) allow judgment on the verdict, if the jury returned a verdict;
>    (2) order a new trial; or
>    (3) direct the entry of judgment as a matter of law.

(c) Granting the Renewed Motion; Conditional Ruling on a Motion for a New Trial.

>    (1) *In General.* If the court grants a renewed motion for judgment as a matter of law, it must also conditionally rule on any motion for a new trial by determining whether a new trial should be granted if the judgment is later vacated or reversed. The court must state the grounds for conditionally granting or denying the motion for a new trial.
>    (2) *Effect of a Conditional Ruling.* Conditionally granting the motion for a new trial does not affect the judgment's finality; if the judgment is reversed, the new trial must proceed unless the appellate court orders otherwise. If the motion for a new trial is conditionally denied, the appellee may assert error in that denial; if the judgment is reversed, the case must proceed as the appellate court orders.

The Sixth Circuit has made clear that a Rule 50(b) motion must in general renew a Rule 50(a) motion made before the case is submitted to the jury. *Hanover Am. Ins. Co. v. Tattooed Millionaire Ent., LLC*, 974 F.3d 767, 780 (6th Cir. 2020). And in order to protect the Seventh Amendment right to trial by jury, the Rule 50(a) motion must have provided notice to the court and opposing counsel of any deficiencies in the opposing party's case. *Id.* Although a Rule 50(b) motion can only be granted on grounds advanced in the pre-verdict Rule 50(a) motion, "in stating the grounds in the required pre-verdict motion, technical precision is not necessary." *Kusens v. Pascal Co.*, 448 F.3d 349, 361 (6th Cir. 2006).

7

Achieving success on a Rule 50(b) motion requires the movant to clear a high bar.

> The standard for granting [a Rule 50(b) motion] requires a finding that viewing the admissible evidence most favorable to the party opposing the motion, a reasonable trier of fact could draw only one conclusion. Another formulation of this standard states that sufficient evidence for submission to the jury will be found unless, when viewed in the light of those inferences most favorable to the non-movant, there is either a complete absence of proof on the issues or no controverted issue of fact upon which a reasonable person could differ.

*Am. & Foreign Ins. Co. v. Bolt*, 106 F.3d 155, 157 (6th Cir. 1997) (cleaned up).

    *B. Rule 59 – New Trial*

FRCP 59 states, in relevant part:

> (a) In General.
>    (1) *Grounds for New Trial.* The court may, on motion, grant a new trial on all or some of the issues--and to any party--as follows:
>       (A) after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court.

As is relevant here, the Sixth Circuit has identified the following grounds upon which a district court may grant a new trial.

> A new trial is appropriate when the jury reaches a seriously erroneous result as evidenced by (1) the verdict being against the clear weight of the evidence; (2) the damages being excessive; or (3) the trial being unfair to the moving party in some fashion, i.e. the proceedings being influenced by prejudice or bias. New trials are not to be granted on the grounds that the verdict was against the weight of the evidence unless that verdict was unreasonable.

*Cranpark, Inc. v. Rogers Group, Inc.*, 821 F.3d 723, 737 (6th Cir. 2016) (cleaned up).

For a Rule 59 motion brought pursuant to the first of these grounds, the district court "must compare the opposing proofs, weigh the evidence, and set aside the verdict only if it determines that the verdict is against the clear weight of the evidence." *United States v. L.E. Cooke Co.*, 991 F.2d 336, 343 (6th Cir. 1993). "The motion should be denied if the verdict is one which could reasonably have been reached, and the verdict is not unreasonable simply because different inferences and conclusions could have been drawn or because other results are more reasonable." *Id.* (cleaned up).  On the other hand, the authority of district courts to grant new trials "is large" and the trial judge has discretion to grant a new trial if it appears to the judge that the verdict is against the weight of the evidence. *Bell v. Johnson*, 404 F.3d 997, 1002 (6th Cir. 2005) (cleaned up).

For a Rule 59 motion brought pursuant to the third of these grounds and alleging error in the jury instructions or jury verdict form, the question is "whether, taken as a whole, the instructions adequately inform the jury of the relevant considerations and provide the jury with a sound basis in law with which to reach a conclusion." *E.E.O.C. v. New Breed Logistics*, 783 F.3d 1057, 1074 (6th Cir. 2015) (cleaned up).  "Erroneous jury instructions only require reversal if they are confusing, misleading, and prejudicial" and even "[a]n erroneous jury instruction should not be reversed where the error is harmless. *Id.* at 1074-75 (cleaned up).

III.   <u>Analysis</u>

*A. The Court cannot consider GCRC's Rule 50(b) renewed motion for judgment as a matter of law because no Rule 50(a) motion was made*

As a preliminary matter, the Court must address whether it may properly consider the Road Commission's Rule 50(b) motion.  As is suggested by the text of the rule itself, such a motion is only proper if it renews a Rule 50(a) motion made at trial.

> A Rule 50(b) motion is only a renewal of the preverdict motion, and it can be granted only on grounds advanced in the preverdict motion.  [Prior Sixth Circuit caselaw] specifies that this requirement protects the plaintiff's Seventh Amendment right to a jury trial by requiring that parties raise important issues *before* the case is submitted to the jury.  And because [caselaw] says that, to maintain a Rule 50(b) motion, the Rule 50(a) motion must have provided notice to the court and opposing counsel of any deficiencies in the opposing party's case before the case went to the jury, then *a fortiori*, the Rule 50(a) motion must have existed, full stop.

*Tattooed Millionaire*, 974 F.3d at 780.

But in this case, as Jackson points out, GCRC did not actually make a Rule 50(a) motion on the record before the case was submitted to the jury.  (ECF No. 78, PageID.2044-45).  The Court understood that the Road Commission's counsel intended to do so given the exchange following the conclusion of plaintiff's case in chief, but the record reflects only that an unnamed motion was made.  Specifically: immediately after the plaintiff rested, defense counsel stated: "Defendant would like to make a motion."  (ECF No. 75, PageID.1886).  The Court then said: "Okay.

10

We can make a -- well, I'll let the record reflect you've made that motion at this point, and I'll take it under advisement, and you may argue that motion and make it at a later time." (*Id.*, PageID.1887).  Defense counsel thanked the Court and then answered in the affirmative to the Court's question of whether defendant intended to call any witnesses.  (*Id.*).  Defense counsel did not raise the issue again, and after trial the Court entered an Order denying the "motion raised on the record at the conclusion of plaintiff's case in chief."  (ECF No. 70, PageID.1406).

On this record, it is clear that no Rule 50(a) motion was actually made. Plaintiff was not on notice of the perceived deficiencies in her case, and she thus had no opportunity to correct them before the case was submitted to the jury.  A Rule 50(b) renewed motion for judgment as a matter of law is therefore not possible.

It is hardly ever in the best interest of a party to argue with the Court, particularly in front of the jury, and here defense counsel correctly understood that the Court had instructed her not to argue the motion but to call witnesses.  Defense counsel could have raised the issue again, at a later time, but failed to do so.  That oversight now precludes defendant from bringing a renewed motion under Rule 50(b).

The Court, however, also erred in not specifically inquiring of defense counsel what motion she intended to make and allowing her to put the grounds for

the motion on the record. "[T]he proper practice is to allow the moving party to make its Rule 50(a) motion before the jury retires to deliberate." *Karam v. Sagemark Consulting, Inc.*, 383 F.3d 421, 426 (6th Cir. 2004). And a district court has no "authority to allow parties to preserve un-made, nonspecific Rule 50(a) motions beyond the jury's verdict." *Tattooed Millionaire*, 974 F.3d at 784; *c.f. Hillside Prods., Inc. v. Cnty. of Macomb*, 389 F. App'x 449, 460 (6th Cir. 2010) (finding that although plaintiffs claimed they were prohibited from elaborating on their Rule 50 motion at trial, the record indicated that in fact counsel requested to reserve the Rule 50 motion so that the case could proceed, the court acknowledged that counsel had preserved the position, but counsel did not ever elaborate on the Rule 50 claims; accordingly, plaintiffs could not bring a renewed Rule 50(b) motion after trial).

Because no Rule 50(a) motion was made on the record before the jury retired to deliberate, no Rule 50(b) renewed motion may now be made. Accordingly, GCRC's motion for judgment as a matter of law under Rule 50(b) is denied.

## B. GCRC's Rule 59 motion for a new trial is granted

GCRC has additionally or alternatively moved for a new trial pursuant to Rule 59. The Sixth Circuit has affirmed that a district court may consider a Rule 59 motion for a new trial even where no Rule 50 motion was filed. *Hillside*

12

*Prods.*, 389 F. App'x at 456.[3]  Thus, the Court's finding that no Rule 50 motion

was or can be made does not preclude consideration of the Rule 59 motion.  As

indicated above, a new trial may be granted under Rule 59 if the verdict is against

the weight of the evidence, if the damages award is excessive, or if the trial was

unfair to the moving party.  *Id.* at 455.[4]

---

[3] The issue has also been addressed by Wright and Miller.

> The availability of the alternative motion for a new trial is beneficial
> also to the party who has lost a verdict and who would be entitled to
> judgment as a matter of law save for some procedural blunder under
> Rule 50. For example, the evidence may be wholly insufficient to
> support the verdict but the trial court cannot order judgment as a
> matter of law under Rule 50(b) if the party did not properly renew the
> motion after the unfavorable verdict was returned. In those
> circumstances the district court, on proper motion, has the authority to
> order a new trial.

9B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure §
2539 (3d ed. April 2022 Update) (cleaned up).

[4] GCRC's motion urges that pursuant to FRCP 59(a)(1), it "requests a new trial in
this matter given irregularities at Trial which rendered the proceedings unfair to
Defendant GCRC."  (ECF No. 76, PageID.1996).  This would suggest that relief
under Rule 59 is only sought on the grounds that the trial was unfair (and that any
evidentiary deficiencies are addressed solely in the Rule 50 motion).  However, the
brief in support of the Road Commission's motion makes clear that a Rule 59 new
trial is also sought on the grounds that the verdict is against the weight of the
evidence.  *See* (*id.*, PageID.2005-06).   The Court will thus evaluate both
arguments.

    *i.*   *A new trial is warranted because the verdict is against the weight of*

       *the evidence.*

The Sixth Circuit has already laid out the legal framework for Jackson's claims.

> The plaintiff must demonstrate four elements to establish a prima facie case of retaliation under both Title VII and ELCRA: (1) she engaged in protected activity, (2) the defendant was aware of the protected activity, (3) "the defendant took an action that was 'materially adverse' to the plaintiff," and (4) there is a causal connection between the plaintiff's protected activity and the defendant's adverse action.
> . . .
> The plaintiff may prove retaliation either through direct evidence or circumstantial evidence. *Redlin v. Grosse Pointe Pub. Sch. Sys.*, 921 F.3d 599, 613 (6th Cir. 2019). If the plaintiff relies on circumstantial evidence, her claims are evaluated using the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Redlin*, 921 F.3d at 613. Under *McDonnell Douglas*, if the plaintiff establishes her prima facie case then the burden shifts to the defendant to demonstrate some "legitimate, nondiscriminatory reason" for its action. *McDonnell Douglas*, 411 U.S. at 802. If the defendant produces such a reason, the burden shifts back to the plaintiff to show that the proffered reason was a mere pretext for discrimination. *Id.* at 804. The ultimate burden, however, remains with the plaintiff to convince the factfinder that the defendant retaliated against her for engaging in protected activity. *Montell v. Diversified Clinical Servs., Inc.*, 757 F.3d 497, 504 (6th Cir. 2014).

(ECF No. 26, PageID.766).   And with regard to her claim that the termination

violates public policy:

> An at-will employee's termination violates public policy if:
> (1) the employee is discharged in violation of an explicit legislative statement prohibiting discharge of employees who act in accordance with a statutory right or duty; (2) the employee is discharged for the failure or refusal to violate the law in the course

> of employment; or (3) the employee is discharged for exercising a
> right conferred by a well-established legislative enactment.
> *McNeil v. Charlevoix Cnty.*, 772 N.W.2d 18, 24 (Mich. 2009).

(*Id.*, PageID.778).

Within this framework, GCRC identifies two areas in which it asserts that
Jackson has not produced evidence pursuant to which a reasonable jury could find
in her favor: that there was a causal link between her termination and EEO Plan
enforcement and that the reasons given for her termination were mere pretext for
discrimination. (ECF No. 76, PageID.2007).[5] The Court will address each in turn.

First, the Road Commission urges that Jackson did not establish but-for
causation between a protected activity and her termination. (*Id.*). GCRC argues
that, contrary to the jury's verdict, there was no evidentiary basis offered at trial
supporting the assertion that Jackson was terminated in retaliation for enforcing
EEOP requirements. (*Id.*). To the contrary, GCRC argues that the only testifying
witness who knew why Jackson was terminated was Director Daly, "who was
unequivocal that EEO Plan enforcement was not the reason for Jackson's
termination." (*Id.*). Instead, GCRC urges, Daly testified that Jackson was
terminated because he lost confidence in her judgment and because, in his view,
her communication style was not conducive to building good relationships. (*Id.*).

---

[5] GCRC notes a third area, "that her opposition activity in regard to EEO Plan
enforcement was reasonable," but fails to elaborate on this theory in this section of
the brief. (ECF No. 76, PageID.2007). The Court will not go searching for
arguments not made.

In response, Jackson urges that, as the Sixth Circuit found, Director Daly's credibility was questionable.  (ECF No. 78, PageID.2046).   Noting that other individuals testified to a good working relationship with Jackson, and that no proof was offered of the complaints Daly said he received, she argues that "the jury simply did not believe [Daly] and found him not to be a credible witness." (*Id.*, PageID.2046-48).  Jackson also points out that the Sixth Circuit specifically found that the temporal proximity between her protected activities and the adverse employment action is strong circumstantial evidence of causation.   (*Id.*, PageID.2048) (quoting ECF No. 26, PageID.775).  And she notes that the jury heard that her termination "came shortly after she began enforcing the Defendant's EEOC policies." (ECF No. 78, PageID.2048).[6]

The Court finds that although Jackson "met the relatively light burden of demonstrating causation at the prima facie stage" on summary judgment, she failed to meet the heightened burden at trial.  (ECF No. 26, PageID.774).  As the Road Commission points out: *no* evidence was offered to support the assertion that Jackson was terminated because of her work on the EEO Plan submissions – the jury could only have relied on conjecture and speculation. Although she may have been terminated within a few months of her EEO work, she was also terminated within a few months of exhibiting what Daly perceived to be a poor

---

[6] Jackson provides no citations to the trial transcript for these assertions; here, too, the Court declines to go searching.

communication style.[7]  Because Jackson failed to introduce evidence from which a jury could have concluded that but-for her EEOP work she would not have been terminated, she failed to carry her burden and a new trial is warranted on these grounds.

Second, GCRC urges that Jackson did not meet her burden to establish that Daly's proffered legitimate non-discriminatory reason for terminating Jackson was pretext.  (ECF No. 76, PageID.2008).  Although, as indicated above, the Court finds that Jackson failed to prove the causation required to make out a prima facie case, the Court finds that she also failed to establish pretext, and a new trial is separately warranted on these grounds.

As the Sixth Circuit has already laid out, there are three interrelated ways in which Jackson could show pretext: that the proffered reason had no basis in fact, that it did not actually motivate the Road Commission's action, or that it was insufficient to motivate the Road Commission's action.  (ECF No. 26, PageID.775-76).[8]  Jackson relies on the first of these, urging that "the jury was convinced by

---

[7] The Court is aware that the Sixth Circuit also found that because many of the same people who complained about Jackson's communication style were involved in the EEO Plans, a reasonable juror could infer that these individuals described Jackson's communication style as offensive and abrasive because they took issue with her EEO compliance efforts.  (ECF No. 26, PageID.775).  Jackson does not now raise this point nor provide any support for that theory from the transcripts.

[8] In *Wilkins v. Eaton Corp.*, 790 F.2d 515 (6th Cir. 1986), the Sixth Circuit discussed, in the context of a Rule 50 motion for what is now termed

Plaintiff's showing that the GCRC's proffered reason(s) had no basis in fact because there was no proof that the alleged complaints that allegedly motivated Daly to terminate Plaintiff were ever actually made to Daly." (ECF No. 78, PageID.2049). Arguing that GCRC "failed to produce anything but unbelievable and unreliable hearsay," Jackson urges that jury must have found the Road Commission's proffered reason unbelievable because GCRC relied primarily on the testimony of Daly and "failed to produce a single original source such as a single person or entity who alleged[ly] made such a report to him." (*Id.*). Instead, Jackson urges that "the overwhelming amount of evidence before the jury was that Jackson was performing exceedingly well in her job." (*Id.*, PageID.2050).

Contrary to Jackson's assertions, GCRC did offer multiple pieces of evidence demonstrating Jackson's demeanor and deportment. Daly, the key defense witness, testified that he received complaints that Jackson's communication style was "abrasive and offensive" as well as "corrosive," that "she

---

judgment as a matter of law, what a plaintiff must show to demonstrate that the proffered reasons for termination are mere pretext. "[T]here must be evidence from which a reasonable jury could conclude that [discrimination] was the *more likely* reason for [plaintiff's] discharge, rather than merely a speculative possibility." *Id.* at 523. A "mere scintilla of evidence" is insufficient; plaintiff must establish her case "by a preponderance of the evidence." *Id.* The United States Supreme Court has likewise emphasized that where, as here, a defendant has offered a nondiscriminatory reason for its decision, the plaintiff must show by a preponderance of the evidence that such reason is mere pretext; "the presumption of discrimination drops out of the picture." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000) (cleaned up).

18

would take a position and it was that way or nothing." (ECF No. 74, PageID.1796, 1815, 1826, 1831). These "complaints were coming from all over. They were coming from the union reps. They were coming from my board . . . from department heads, and they're essentially the same complaints. It's the same thing repeatedly." (*Id.*, PageID.1832). He stated that after correcting Jackson himself on an issue, her response was "rigid." (*Id.*, PageID.1798). Daly also characterized her management style as "monolithic" and "inflexible," and testified that two individuals considered or did resign from the Road Commission because of issues with Jackson. (*Id.*, PageID.1799, 1834). Daly also stated that he received a call from a long-time vendor indicating that they would send in their EEO Plan, Jackson would correct it, they would resubmit, and then Jackson would identify new issues; Daly recalled that this happened four or five times and finally the vendor indicated that "if this continued, they would not be doing business with [the Road Commission] anymore, it was just too difficult." (*Id.*, PageID.1835-36). Ultimately, Daly said he terminated her because he "had lost confidence in her judgment" and "felt that her communication style was not conducive to building good relations, particularly with [the Road Commission's] major stakeholders." (*Id.*, PageID.1842).

This testimony was corroborated by multiple original source documents entered into evidence in which the jury could read for itself how Jackson addressed

the Road Commission's employees and partners.[9]  For instance, Exhibit 19 was

brought to the jury's attention at trial.  (ECF No. 74, PageID.1641-42).  Exhibit 19

is an email thread from July 2016 in which an outside vendor indicated that they

had received a call from Jackson stating that their EEO Plan was noncompliant,

that Jackson said she would send a list of missing attributes, and that Jackson

stated that the corrections needed to be made that day or the vendor would not be

issued a contract.  (ECF No. 59, PageID.1040).  The vendor expressed concern that

notwithstanding what they perceived to be last minute new information, as of 1:30

in the afternoon Jackson had not given them instructions on the new requirements.

(*Id.*).  Further, another GCRC employee followed up with Jackson and informed

her that the conversation between Jackson and the vendor was perceived as

"condescending."   (*Id.*, PageID.1040).   Likewise Exhibit 16 was specifically

highlighted at trial.  (ECF No. 74, PageID.1631-32).  That exhibit, too, is an email

chain regarding a vendor's submission of an EEO Plan.   (ECF No. 59,

PageID.1031).  In this one, Jackson wrote to the vendor providing a list of reasons

that their Plan has not been approved; top of the list was that the document was

addressed to the wrong person.   (*Id.*).   Exhibit 12, also discussed during trial,

similarly provides evidence of Jackson's conduct when dealing with the Road

---

[9] Joint Exhibits 1-34 were admitted by stipulation.  (ECF No. 73, PageID.1521-22).
A copy of the 34 joint exhibits was filed at ECF No. 59, and a book containing the
exhibits, including Exhibit 35, the list of stipulated facts, was given to the jury for
their deliberations.  (ECF No. 75, PageID.1916-17, 1986).

Commission's vendors.  (ECF No. 74, PageID.1634).  After being informed of the need to file an updated EEO Plan, the vendor called and, as directed, attempted to speak with Jackson.  (ECF No. 59, PageID.1020).  The vendor called three times, each time requesting a return call, but Jackson did not return any of them.  (*Id.*).  In response to Director Daly's admonition that they needed to do better in future, Jackson replied that she had been on vacation and medical leave.  (*Id.*, PageID.1019).  But as Director Daly noted in his response: the issue was not that she was out of the office, but that vendors who needed to contact her about their EEO Plan submissions did not know where she was or when she would be back.  (*Id.*, PageID.1018).  Similarly Exhibit 20, which was also addressed at trial, is a vendor email indicating that despite two calls to Jackson, they had not received a return call informing them of where to send their EEO Plan.  (ECF No. 74, PageID.1638-39); (ECF No. 59, PageID.1043).  Several of the exhibits which were admitted but not specifically highlighted during trial also demonstrated the tone Jackson assumed in her communication with others.  *See, e.g.*, (ECF No. 59, PageID.998) (Exhibit 6; email rejecting EEO Plan in part because it was not typed); (*Id.*, PageID.1052-54) (Exhibit 23; email in which Jackson chided a vendor for addressing her by her first name).

Director Branch, too, although he generally testified favorably towards Jackson, said that he had heard that Jackson was "disrespectful" towards vendors.

(ECF No. 73, PageID.1509-10, 1526-27, 1534-35).  Likewise Ms. Mullin said she heard Jackson tell vendors not to use her first name and that they must refer to her as Director Jackson.  (ECF No. 75, PageID.1891-92).  Ms. Mullin testified that working for Jackson was "stressful" because "[i]t was a controlled environment where she wanted things very specific." (*Id.*, PageID.1889).  And Jackson stipulated that she was twice counseled about her "ridged and inflexible demeanor." (ECF No. 54, PageID.920); *see also* (ECF No. 75, PageID.1914-16) (plaintiff objected to inclusion of the stipulated fact on the grounds that during her testimony she contradicted it; Court overruled objection); (*id.*, PageID.1920) (stipulated fact read to the jury).  At trial, she also testified that she required contractors to address her as Ms. Jackson or by her title.  (ECF No. 74, PageID.1641); *see also* (ECF No. 59, PageID.1052-54).

Contrary to Jackson's assertion, there were multiple pieces of evidence produced at trial which supported the Road Commission's assertion that she was terminated because her communication style was abrasive and inflexible.  What was *not* produced at trial was anything other than mere speculation that the GCRC's reason was pretextual.  Jackson has not identified any evidentiary support for her claim that she was in fact terminated for her EEO compliance work, other than the reference to temporal proximity addressed above and witnesses who said they liked working with her.  Even if Jackson had carried her burden to show

22

causation at the prima facie stage, she did not carry her burden to show that Daly's proffered reason for firing her was mere pretext and a new trial is separately warranted on these grounds. *See, e.g.*, *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000) (in the context of a Rule 50 motion, "an employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred").

  ii. *A new trial is separately warranted because of irregularities at trial which prejudiced GCRC*

  The Road Commission separately urges that it is entitled to a new trial on the grounds that the Court applied an erroneous legal standard to the jury instructions and verdict form. (ECF No. 76, PageID.2015). Specifically, GCRC argues that the Court inaccurately instructed the jury that Jackson was, definitively, engaged in protected activity and that the Court also incorrectly failed to include on the verdict form a question as to whether Jackson had made out a prima facie case of retaliation. (*Id.*, PageID.2015-16).

  At its core, the Road Commission's main argument is that, contrary to the ruling of this Court (and related jury instructions and verdict form), the Sixth

Circuit did not hold that Jackson's EEO compliance efforts were protected activity as a matter of law.  Instead, the Road Commission argues that at trial Jackson should have still had the burden to prove her *prima facie* case, particularly with regard to whether her EEO actions constituted "protected activity."  Jackson disputes this, urging that the Sixth Circuit "clearly and unequivocally determined that Plaintiff was engage[d] in protected activity when she attempted to enforce Defendant's EEOC policies."  (ECF No. 78, PageID.2050).

The Sixth Circuit's opinion is not entirely clear as to whether it held that her EEO compliance efforts *could* be considered protected activity or *were definitely* protected activity.  First, the Sixth Circuit said generally that "[w]hen viewing the facts in the light most favorable to Jackson, a reasonable juror could conclude that she engaged in protected activity."  (ECF No. 26, PageID.770).  As noted above, the court then held specifically that there was "insufficient evidence" to show that her investigation into complaints of discrimination by Ivey and McClane were protected activity.  (*Id.*).  The court also clearly held that "Jackson's investigation of Branch's complaints against Bennet, however, was protected activity."  (*Id.*).  And then with regard to the relevant question here, the Sixth Circuit held that "a reasonable juror *could find* that Jackson's conduct as EEO Officer was protected activity. . . . Jackson's actions *could reasonably be viewed as* steps to ensure there was no discrimination in hiring both within GCRC and among its vendors and,

24

thus, were protected activity under Title VII." (*Id.*, PageID.771) (emphasis added). This would suggest that the Sixth Circuit had merely concluded that the question of whether her EEO compliance efforts constituted protected activity should go to the jury. However, the Sixth Circuit then concluded the opinion by stating that "Jackson's enforcement of EEOP policies [was] protected activit[y]." (*Id.*, PageID.778).[10]

At trial, over the objection of defense counsel, the Court determined that the Sixth Circuit already held that Jackson was definitively engaged in protected activity and provided jury instructions and a verdict form reflecting that decision. (ECF No. 74, PageId.1751-52) (counsel debated whether the Sixth Circuit made a definitive ruling but this Court did not make finding either way); (*id.*, PageID.1854-57) (after hearing argument, this Court ruled that it would "just indicate [in the jury instructions that] the plaintiff was engaged in protected activity"); (ECF No. 75, PageID.1934) (this Court instructed jury that "[t]he plaintiff was engaged in a protected activity"); (*id.*, PageID.1944-49) (plaintiff's counsel requested inclusion of stipulated fact that she was engaged in protected activity; defense counsel repeated their objection to that premise and refused to stipulate to it but acknowledged this Court's earlier ruling in favor of plaintiff; the Court modified an additional section of jury instructions to state that Jackson was

---

[10] The Sixth Circuit's opinion also states generally, at the very beginning, that "Jackson engaged in protected activity." (ECF No. 26, PageID.759).

definitively engaged in protected activity); (*id.*, PageiD.1976-77) (the Court provided a special instruction to the jury following closing arguments that "I should have said that she did engage in protected activity"); (ECF No. 66) (verdict form was devoid of any question inquiring whether Jackson engaged in protected activity).

This decision was in error, given the ambiguity of the Sixth Circuit's decision. In any lawsuit, a plaintiff has the burden to prove each of the elements of her claim. And particularly in the context of a case alleging discriminatory or retaliatory firing under the *McDonnell Douglas* burden shifting framework, "[t]he ultimate burden . . . remains with the plaintiff to convince the factfinder that the defendant retaliated against her for engaging in protected activity." (ECF No. 26, PageID.766). Because the Sixth Circuit's opinion did not conclusively determine that Jackson *was engaged* in protected activity in her EEO work, it was error for the Court not to put this question to the jury. This error undeniably prejudiced defendant, as plaintiff was relieved of a significant burden in her case, and a new trial is separately warranted on these grounds.

The Road Commission makes various other arguments in support of its request for a new trial. The Court need not reach these arguments, however, given the strong reasons previously identified justifying the relief requested. Accordingly,

IT IS ORDERED that GCRC's Rule 50 motion for judgment as a matter of law is DENIED.

IT IS FURTHER ORDERED that GCRC's Rule 59 motion for a new trial is GRANTED.

**SO ORDERED.**

s/Bernard A. Friedman
Hon. Bernard A. Friedman
Dated: April 21, 2023            Senior United States District Judge
Detroit, Michigan