# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

MAKINI JACKSON,                    )
                                   )
    Plaintiff,                 )    Civil Action No. 2:18-cv-11199
                                   )
v.                                 )    Hon. Bernard A. Friedman
                                   )    Magistrate Judge Jonathan J.C. Grey
GENESEE COUNTY ROAD                )
COMMISSION,                        )
                                   )
    Defendant.                 )
                                   )

---

BERNARD LEGAL SERVICES
By: Paul Bernard (P55722)
*Attorney for Plaintiff*
13 N. Washington, Ste. 176
Ypsilanti, Michigan 48197
(734) 548-9897
paul@bernardappeals.com

LEWIS & MUNDAY, P.C.
By: David J. Cross (P42683)
    Ronda T. Truvillion (P70767)
*Attorneys for Plaintiff*
535 Griswold, Ste. 2300
Detroit, MI 48226
(313) 961-2550
dcross@lewismunday.com
rtate@lewismunday.com

KIRK, HUTH, LANGE &
BADALAMENTI, PLC
By: Raechel M. Badalamenti (P64361)
    Robert T. Carollo, Jr. (P76542)
*Attorneys for Defendant*
19500 Hall Road, Ste. 100
Clinton Twp., MI 48038
(586) 412-4900
rbadalamenti@kirkhuthlaw.com
rcarollo@kirkhuthlaw.com

---

# PLAINTIFF'S MOTION FOR RECONSIDERATION
## OR, IN THE ALTERNATIVE, TO CERTIFY INTERLOCUTORY APPEAL

Plaintiff Makini Jackson, by and through her counsel, Bernard Legal Services, PLLC, and pursuant to Fed. R. Civ. P. 60(a) and LR 7.1(h)(2)(A), moves this Court to reconsider its order of April 21, 2023, granting a new trial to Defendant Genesee County Road Commission. As an alternative form of relief, Plaintiff asks this Court to issue an order under 28 U.S.C. § 1292(b), which would certify an interlocutory appeal from this Court's order granting a new trial. In support of her Motion, Plaintiff states as follows:

1.     When it reversed this Court's order granting summary judgment to Defendant, the Sixth Circuit clearly identified the factual issues that were unresolved in this case. The Sixth Circuit also made it clear that there was enough evidence in the summary judgment record to permit a reasonable jury to resolve these issues in favor of either Plaintiff or Defendant.

2.     The unresolved issues pertained to causation. The Sixth Circuit ruled that, under the burden-shifting framework established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), Plaintiff had made a *prima facie* showing that her discharge was caused by Defendant's retaliatory motives, and that Defendant provided evidence to show that it discharged Plaintiff for a legitimate nondiscriminatory reason, purportedly her "abrasive" manner of communication. The Sixth Circuit also ruled that Plaintiff had substantial evidence to show that Defendant's proffered reason was pretextual. The Sixth Circuit made it clear that,

2

given the parties' evidence, the question of causation turned on subjective factors and upon the assessment of witness credibility. *Jackson v. Genesee Cnty. Road Comm'n*, 999 F.3d 333, 350-52 (6th Cir. 2021) (discussing the evidence and concluding that "a reasonable juror could find that GCRC fired Jackson because of her protected activities rather than her communication style."). When a case turns on matters of witness credibility and subjective considerations, a court cannot grant a new trial by second-guessing the jury's findings. *Denhof v. City of Grand Rapids*, 494 F.3d 534, 543 (6th Cir. 2007).

3.     Given the nature of the evidence and issues in this case, and given the Sixth Circuit's clear rulings, this Court erred in ruling that the jury's finding of causation was against the great weight of the evidence. This Court's assessment of the evidence regarding causation and pretext improperly usurped the jury's role in making credibility determinations and in weighing subjective factors. As such, this Court incorrectly ruled that Defendant was entitled to a new trial on the issue of causation.

4.     This Court also erred in ruling that the jury should have been charged with making a finding on the question whether Plaintiff engaged in protected activity. Given the Sixth Circuit's rulings and the parties' evidence and arguments, there was no dispute about whether Plaintiff had engaged in protected activity.

5.     The Sixth Circuit identified two courses of conduct by Plaintiff that could count as protected activity: her investigation of Anthony Branch's discrimination complaint and her efforts to enforce Defendant's policies regarding the equal employment opportunity plans of contractors who provided services to Defendant. The Sixth Circuit held that Plaintiff had submitted sufficient evidence to prove that she engaged in both courses of conduct. *Jackson*, 999 F.3d at 347. At both the summary judgment and the trial stage, Defendant did not have any evidence to show that Plaintiff had not engaged in either of these courses of conduct or that she did not have a reasonable belief that she was opposing discrimination by engaging in such conduct. Because Defendant had no evidence to contradict Plaintiff's showing that she engaged in protected activity, there was no dispute for the jury to resolve and, therefore, no error in either the jury instructions or the verdict form.

6.     These errors were apparent from the record and the applicable law at th time of this Court's ruling. The correction of these errors will change the outcome of the prior decision and result in the entry of a final judgment for Plaintiff. As such, this Court may correct them under Fed. R. Civ. P. 60(b) and Local Rule 7.1(h)(2)(A).

7.     In the event that this Court denies Plaintiff's Motion for Reconsideration, Plaintiff asks that this Court issue an order certifying an interlocutory appeal from the order granting a new trial. Under 28 U.S.C. 1292(b), such certification is warranted when (1) the challenged order "involves a controlling

question of law as to which there is substantial ground for difference of opinion;" and (2) "an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). District courts in the Sixth Circuit have held that a question about the sufficiency of evidence of causation can be characterized as a controlling question of law as to which there is substantial ground for difference of opinion. *See Cardwell v. Chesapeake Ohio Ry. Co.*, 504 F.2d 444, 445-46 (6th Cir. 1974). An immediate appeal from this order will determine whether Plaintiff is entitled to a judgment on the jury's verdict or whether a new trial is necessary; and resolution of this issue in Plaintiff's favor will save the parties and the court the time and expense of conducting a second trial.

8.      Plaintiff's counsel contacted Defendant's counsel by email on April 27, 2023 to seek concurrence in this Motion. Defendant's counsel did not respond by May 2, 2023.

For all of these reasons, Plaintiff asks this Court to reconsider its order of April 21, 2023, which granted Defendant's motion for a new trial, or, in the alternative, Plaintiff asks this Court to certify an interlocutory appeal from the April 21, 2023 order, pursuant to 28 U.S.C. 1292(b).

Respectfully submitted,

Dated: May 2, 2022

/s/     Paul Bernard
BERNARD LEGAL SERVICES, PLLC
Paul Bernard (P55722)
*Attorney for Plaintiff*
13 North Washington, Suite 176
Ypsilanti, Michigan 48197
734.548.9897
paul@bernardappeals.com

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

MAKINI JACKSON,        )

                         )

       Plaintiff,     )    Civil Action No. 2:18-cv-11199

                         )

v.                   )    Hon. Bernard A. Friedman

                         )    Magistrate Judge Jonathan J.C. Grey

GENESEE COUNTY ROAD   )

COMMISSION,        )

                         )

       Defendant.   )

                         )

---

BERNARD LEGAL SERVICES
By: Paul Bernard (P55722)
*Attorney for Plaintiff*
13 N. Washington, Ste. 176
Ypsilanti, Michigan 48197
(734) 548-9897
paul@bernardappeals.com

LEWIS & MUNDAY, P.C.
By: David J. Cross (P42683)
    Ronda T. Truvillion (P70767)
*Attorneys for Plaintiff*
535 Griswold, Ste. 2300
Detroit, MI 48226
(313) 961-2550
dcross@lewismunday.com
rtate@lewismunday.com

KIRK, HUTH, LANGE &
BADALAMENTI, PLC
By: Raechel M. Badalamenti (P64361)
    Robert T. Carollo, Jr. (P76542)
*Attorneys for Defendant*
19500 Hall Road, Ste. 100
Clinton Twp., MI 48038
(586) 412-4900
rbadalamenti@kirkhuthlaw.com
rcarollo@kirkhuthlaw.com

---

## PLAINTIFF'S BRIEF IN SUPPORT OF HER
## MOTION FOR RECONSIDERATION
## <u>OR, IN THE ALTERNATIVE, TO CERTIFY INTERLOCUTORY APPEAL</u>

## <u>STATEMENT OF ISSUES PRESENTED</u>

I.   **Did this Court err when it granted a new trial because Plaintiff's evidence of causation was sufficient to permit a reasonable jury to find that Defendant had retaliatory motives in discharging Plaintiff and because, in light of the Sixth Circuit's ruling, the jury was not required to make a finding on protected activity because there was no factual dispute on that issue.**

Plaintiff answers, "yes."

Defendant presumably answers "no."

II.  **If this Court declines to reconsider its order granting a new trial, should it certify an interlocutory appeal from that order because the grant of a new trial involves a controlling question of law as to which there is substantial ground for difference of opinion and because an immediate appeal will materially advance the ultimate termination of this case.**

Plaintiff answers, "yes."

Defendant presumably answers "no."

## <u>CONTROLLING AUTHORITY</u>

*Braun v. Ultimate Jetcharters, LLC*, 828 F.3d 501 (6th Cir. 2016)

*Cardwell v. Chesapeake Ohio Railway Co.*, 504 F.2d 444 (6th Cir. 1974)

*Denhof v. City of Grand Rapids*, 494 F.3d 534 (6th Cir. 2007).

*Jackson v. Genesee Cnty. Road Comm'n*, 999 F.3d 333 (6th Cir. 2021)

*Yazdian v. Conmed Endoscopic Techs., Inc.*, 793 F.3d 634 (6th Cir. 2015)

Fed. R. Civ. P. 60(b)

Local Rule 7.1(h)(2)(A)

28 U.S.C. § 1292(b)

## <u>STATEMENT OF FACTS</u>

I.   **The Issues Presented for Trial**

In her complaint, Plaintiff alleged that Defendant discharged her in violation of both 42 U.S.C. § 2000e and MCL 37.2701, the anti-retaliation provisions of the federal and Michigan statutes that prohibit employment discrimination. Plaintiff also alleged that she was wrongfully discharged under Michigan common law because the discharge constituted a violation of public policy. More specifically, Plaintiff alleged that she was discharged because she investigated employee complaints of discrimination and because she made efforts to enforce compliance with Defendant's policy that its contractors should have appropriate equal employment opportunity plans ("EEOPs"). (Complaint, RE 1, PageID# 1-9).

Plaintiff's two statutory retaliation claims and her common-law claim required proof of the same four elements: (1) that Plaintiff engaged in protected activity; (2) that Defendant knew about Plaintiff's protected activity; (3) that Defendant took adverse action against Plaintiff; and (4) that there was a causal connection between the Plaintiff's protected activity and Defendant's adverse action. *Jackson v. Genesee Cnty. Rd. Comm'n*, 999 F.3d 333, 343-44 (6th Cir. 2021). There has never been any dispute in this case that Plaintiff could establish the second and third elements. Defendant has disputed the elements of protected activity and causation, and it sought summary judgment on those two issues.

With respect to Plaintiff's allegations of protected activity, Defendant argued that Plaintiff could not prove that she engaged in protected activity because all of the conduct that she alleged as protected activity fell within the scope of her job duties and because, as a matter of law, an employee's performance of job duties could not constitute protected activity.  (Defendant's Motion for Summary Judgment at 9-12, RE 14, PageID 75-78; Defendant's Reply Brief at 5-6, RE 16, PageID 688-89). Defendant also argued that, with respect to her investigation of Anthony Branch's discrimination allegations, Plaintiff could not show that she engaged in protected activity because the evidence showed beyond question that Defendant had supported her "at every turn" during that investigation. (Defendant's Motion for Summary Judgment at 11-12, RE 14, PageID 77-78).

With respect to issues of causation, Defendant argued that Jackson could not establish the requisite causal connection because it had a legitimate non-discriminatory reason for terminating her employment. According to Defendant, that reason was Plaintiff's "abrasive" manner of communication. (Defendant's Motion for Summary Judgment at 12-15, RE 14, PageID 78-81). Defendant also argued that there was no evidence to show that this reason was pretextual. (*Id*.).

This Court ruled that Defendant was entitled to summary judgment, concluding that, as a matter of law, there was not enough evidence to permit a reasonable jury to find in Plaintiff's favor on the issues of protected activity and

causation. On the issue of protected activity, this Court accepted Defendant's legal argument that a human resources employee, such as Plaintiff, could not prove that she had engaged in protected activity unless she could show that her investigations of discrimination complaints "'were beyond her regular job duties.'" (Opinion and Order at 20, RE 21, Page ID# 716) (quoting *Lewis-Smith v. Western Ky. Univ.*, 85 F. Supp. 3d 885, 909 (W.D. Ky. 2015)).

This Court also concluded that Plaintiff could not prove causation for two reasons. First, it ruled that Plaintiff failed to make a *prima facie* showing of causation. Second, it ruled that, regardless of whether Plaintiff had enough evidence to make out a *prima facie* showing, there could be no dispute whether Defendant had a legitimate non-discriminatory reason for its decision to discharge her. (Opinion and Order at 21-29, RE 21, Page ID# 717-25).

Plaintiff filed an appeal of right from this Court's summary judgment order, and the Sixth Circuit reversed this Court's decision to grant Defendant's motion for summary judgment and remanded this case for trial. In its opinion, the Sixth Circuit made specific legal rulings that determined what factual questions were left for trial.

On the issue of protected activity, the Sixth Circuit rejected Defendant's purely legal argument that conduct within a plaintiff's job duties could not count as protected activity for the purposes of a retaliation claim. *Jackson*, 999 F.3d at 345-46. The Sixth Circuit went on to rule that, in this case, there were two instances of

conduct that met the standard for proving protected activity: Plaintiff's investigation of Anthony Branch's discrimination complaints against John Bennett; and Plaintiff's efforts to enforce compliance with Defendant's policies regarding the EEOPs of its contractors. *Id*. at 347. In making these rulings, the Sixth Circuit ruled out Defendant's factual defense on the issue of protected activity. As the Sixth Circuit explained: "[w]hether Daly approved of Jackson's conduct may be relevant when considering causation, but Daly's approval or disapproval does not change whether Jackson's conduct is protected activity." *Id*. at 347.

On the basis of these rulings, the Sixth Circuit also ruled that there were no factual questions remaining regarding the element of protected activity, concluding unequivocally that Plaintiff had engaged in protected activity when she investigated Branch's complaints about Bennett and when she sought to enforce Defendant's policies about contractors' EEOPs. At the conclusion of its opinion, the Sixth Circuit held that this Court:

> incorrectly found that Jackson did not engage in protected activity because her investigations into complaints of discrimination and enforcement of EEOP policies were within her job responsibilities as human resource director. As previously explained, ***Jackson's investigations into Branch's complaints that Bennett was discriminating against him because of his race and Jackson's enforcement of EEOP policies were protected activities***.

*Jackson*, 999 F.3d at 352 (emphasis added).

4

With respect to causation issues, the Sixth Circuit held that Plaintiff had enough evidence to make a *prima facie* showing of causation and to permit a reasonable jury to conclude that Defendant's proffered legitimate non-discriminatory reason was pretextual. *Jackson*, 999 F.3d at 351-52. The Sixth Circuit specifically identified the record evidence that would be sufficient to support a jury finding of pretext.

> Several GCRC employees and one GCRC board member reported having good working relationships with Jackson. Branch reported that he had an "excellent" work relationship with Jackson and said that no one from his department, which was the largest at GCRC, had complained to him about Jackson. Ivey also had a "good working relationship" with Jackson and had never heard complaints about Jackson's communication style. DE 15-34, Ivey Dep., Page ID 553–54. Latimer reported that he had a great working relationship with Jackson and did not have any concerns about her communication style. Dickerson, a GCRC board member, stated that he never heard complaints about Jackson. This evidence contradicts GCRC's claim that Jackson's communication style was inflexible and abrasive and could lead a juror to conclude Jackson's communication style was not the true reason she was fired.
>
> Furthermore, several of the GCRC employees who complained about Jackson's communication style also complained about Jackson's protected activities, so a reasonable juror could conclude that their complaints about Jackson's style were motivated to some degree by their opposition to her protected activities.

*Id*.

Accordingly, the Sixth Circuit went on to point out that, despite this Court's analysis of the evidence at the summary judgment stage, "there remains a genuine factual dispute whether Jackson's employment was terminated for enforcing EEOP

requirements and investigating claims of discrimination or because of her allegedly abrasive communication style." *Jackson*, 999 F3d at 535. The Sixth Circuit emphasized that, given the nature of the record evidence, this question was exclusively reserved for the jury: "*'we must allow the jury to resolve the issue of whether the evidence [Jackson] cites is sufficient evidence to conclude that [GCRC] retaliated against [Jackson] for opposing an unlawful employment practice*.'" *Id*. at 351 (emphasis added & modifications in original) (quoting *Yazdian v. Conmed Endoscopic Techs., Inc.*, 793 F.3d 634, 649 (6th Cir. 2015)).

## II.     The Evidence at Trial and the Jury's Verdict

Between January 31 and February 3, 2023, this matter was tried before a jury. During the trial, Plaintiff produced four witnesses on her behalf, including Plaintiff herself. Plaintiff's witnesses provided testimony that was consistent with the evidence that, according to the Sixth Circuit, created a question for the jury. In particular, Plaintiff produced testimony from Anthony Branch and Ronald Latimer, who testified that they had good working relationships with Plaintiff and that her communication style was not abrasive or problematic. (RE 73, PageID 1509-10; RE 75, PageID 1879-82). There was also testimony showing that Plaintiff performed her job duties at a high level. (RE 73, PageID 1510-11; RE 74, PageID 1682; RE 75, PageID 1879). Plaintiff also testified about the nature and quality of her job performance, describing and giving reasons for her actions during her employment,

especially with respect to her enforcement of Defendant's EEOP policies. (RE 73, PageID 1572-88).

Defendant produced two witnesses, the most important of which was John Daly, Defendant's former chief executive who made the decision to discharge Plaintiff. Here again, the testimony was consistent with the evidence that had been available at the summary judgment stage. In particular, Daly testified that had received complaints about Plaintiff's communication style from "union reps. . . . from my board . . . from department heads" and from contractors. (RE 74, PageID 1832, 1835-36). In this respect, Daly testified that a significant portion of the complaints about Plaintiff's communication style arose from her efforts to enforce Defendant's policies regarding contractor EEOPs. This is precisely the kind of evidence that the Sixth Circuit held would permit a reasonable juror to "conclude that their complaints about Jackson's style were motivated to some degree by their opposition to her protected activities." *Jackson*, 999 F.3d at 352.

There was also significant evidence that would permit a reasonable jury to doubt the credibility of Daly's testimony. Daly had asserted that Branch complained about Plaintiff's job performance, but Branch was unaware of that assertion and denied making any such complaint. (RE 73, PageID 1509-10). Cloyce Dickerson, one of Defendant's Commissioners, testified that Daly had told him that Plaintiff was "doing a great job" only a week before Plaintiff was discharged and that, to his

knowledge, Daly had decided to discharge her without giving her any warnings or discipline. (RE 74, PageID 1682-83). Dickerson also testified that he had never heard anything about contractors making complaints about Plaintiff. (RE 74, PageID 1686-89).

On the basis of this evidence, the jury determined that Defendant discharged Plaintiff because of her efforts to enforce Defendant's policies for EEOP compliance by contractors.

## **ARGUMENT**

I.   **This Court erred when it granted a new trial. As the Sixth Circuit held, Plaintiff's evidence of causation was sufficient to permit a reasonable jury to find that Defendant had retaliatory motives in discharging Plaintiff; and the jury was not required to make a finding on protected activity because there was no factual dispute on that issue.**

A.   *Standard for Granting Reconsideration*

Fed. R. Civ. P. 60(a) permits a party to move for reconsideration of a non-final order to "correct a clerical mistake or a mistake arising from oversight or omission." Similarly, Local Rule 7.1(h)(2)(A) permits a party to move for reconsideration of a non-final order to correct a mistake that "changes the outcome of the prior decision, and the mistake was based on the record and law before the court at the time of its prior decision."

B.   *This Court erred in ruling that a new trial was warranted because the jury's verdict was against the clear weight of the evidence on the issues of causation and pretext. The Sixth Circuit expressly held that Plaintiff's evidence on these issues was sufficient to permit a reasonable jury to find pretext and causation.*

A district court may grant a motion for a new trial under Fed. R. Civ. P. 59 if it "determines that the verdict is clearly against the weight of the evidence." *Denhof v. City of Grand Rapids*, 494 F.3d 534, 543 (6th Cir. 2007). To make this determination, a trial court "must compare the opposing proofs, weigh the evidence, and set aside the verdict only if it determines that the verdict is against the clear weight of the evidence." *United States v. L.E. Cooke Co., Inc.*, 991 F.2d 336, 343

(6th Cir. 1993). Although trial courts have broad discretion in ruling on motions under Rule 59, "[c]ourts are not free to reweigh the evidence and set aside the jury verdict merely because the jury could have drawn different inferences or conclusions or because judges feel that other results are more reasonable." *Duncan v. Duncan*, 377 F.2d 49, 52 (6th Cir. 1967) (internal quotation marks omitted); *see also L.E. Cooke*, 991 F.2d at 343. A jury's verdict must stand "if it is one the jury reasonably could have reached; we cannot set it aside simply because we think another result is more justified." *Innovation Ventures, LLC v. N2G Distrib., Inc.*, 763 F.3d 524, 534 (6th Cir. 2014) (citation and internal quotation marks omitted). The Sixth Circuit has held that it "will overturn a grant of a motion for a new trial on the basis that the verdict was against the weight of the evidence where it is clear that the jury verdict was reasonable." *Denhof*, 494 F.3d at 543.

When a verdict involves the jury's assessment of witness credibility, a district court has less discretion to set aside a jury verdict under Rule 59. *Denhof*, 494 F.3d at 543. This heightened standard for overturning a jury verdict has particular application "where 'the case came down to a question of who the jury believed.'" *Id*. at 543-44 (quoting *Holmes v. City of Massillon*, 78 F.3d 1041, 1048 (6th Cir.1996)).

Plaintiff's allegations of retaliation involved circumstantial evidence of causation. When a plaintiff relies upon circumstantial evidence, "she must meet the

*McDonnell Douglas* burden-shifting test, meaning that she must establish her prima facie case and then, if the defendant provides a nondiscriminatory reason for her termination, prove that the employer's reason is pretextual." *Jackson*, 999 F.3d at 349 (citing *Imwalle v. Reliance Med. Prods.*, 515 F.3d 531, 544 (6th Cir. 2008)). Thus, when relying on circumstantial evidence of causation, a plaintiff can prove causation by making a *prima facie* showing of causation and by providing evidence of pretext. *Jackson*, 999 F.3d at 349. A plaintiff can prove pretext "by showing that the employer's proffered reason for the adverse action (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Braun v. Ultimate Jetcharters, LLC*, 828 F.3d 501, 513 (6th Cir. 2016) (citing *Jackson v. VHS Detroit Receiving Hosp., Inc.*, 814 F.3d 769, 779 (6th Cir.2016)).

In ruling that Plaintiff failed to provide sufficient evidence of causation, this Court appeared to improperly augment Plaintiff's burden of proof under the *McDonnell Douglas* burden shifting test by concluding that Plaintiff's evidence was insufficient because it did not contain direct evidence of Defendant's retaliatory motive. As this Court put it, "no evidence was offered to support the assertion that Jackson was terminated because of her work on the EEO Plan submissions." (RE 80, PageID 2073). This Court also characterized Defendant's proffered testimony and documents about its reasons for Plaintiff discharge as "'abundant and

11

uncontroverted independent evidence that no discrimination had occurred.'" (RE 80, PageID 2080) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000)). Through this analysis, this Court effectively ruled that Plaintiff's evidence was insufficient because it was circumstantial and that Defendant's evidence was uncontroverted because it was direct. In this connection, this Court also appeared to conclude that a verdict based on circumstantial evidence was conjectural and speculative because it involved inferences. Such an approach to weighing the evidence is flatly inconsistent with the rules governing the McDonnell Douglas burden-shifting test and with the Sixth Circuit's rulings about the sufficiency of Plaintiff's evidence. *See Jackson*, 999 F.3d at 349.The Sixth Circuit made it clear that Plaintiff's evidence would permit a reasonable jury to infer that Defendant had a retaliatory motive for Plaintiff's discharge. *Jackson*, 999 F.3d at 351-52.

Case law confirms that it is error to order a new trial when a retaliation plaintiff proves her case with the kind of evidence that Plaintiff offered here. The Sixth Circuit has held that a plaintiff can carry her burden of proof on causation by using temporal proximity to make out a prima facie case and by offering her own testimony about the circumstances of the adverse action, as long as that testimony supports inferences that the defendant had a retaliatory motive. In *Braun v. Ultimate Jetcharters, LLC*, 828 F.3d 501, 513 (6th Cir. 2016), the plaintiff alleged that she

was discharged because she made complaints about sexual harassment. The defendant contended that she was discharged because she had engaged in misconduct on the job. With respect to the issue of causation, the plaintiff offered evidence that she was discharged within three weeks of making a formal sexual harassment complaint, and she testified that she had not engaged in any misconduct and that some of the defendant's other employees were not disciplined or discharged for conduct in which she allegedly engaged. To counter the plaintiff's evidence, the defendant offered extensive evidence of several instances of misconduct. The jury reached a verdict for the plaintiff, and the defendant moved for a new trial, contending that the plaintiff's evidence of causation and pretext were insufficient. The district court denied the motion.

The Sixth Circuit affirmed the district court's ruling, concluding that the plaintiff had produced enough evidence to permit a reasonable jury to find causation and pretext. *Braun*, 828 F.3d at 513-14. First, the Sixth Circuit held that the plaintiff's evidence of temporal proximity was, in itself, enough to establish a *prima facie* case. Second, the Sixth Circuit held that the plaintiff's testimony was sufficient to supplement that *prima facie* evidence and to establish pretext. The *Braun* Court noted that:

> She testified that many of her alleged wrongdoings had no basis in fact: she denied committing some of the procedural violations of which she was accused or explained that her actions did not actually deviate from standard procedures or violate regulations. Plaintiff also testified that

13

the alleged violations of procedures and regulations "did not actually motivate" her termination, . . . rather, Gordon told her that she was fired for sending "[i]nappropriate e-mails" and because her "[c]onduct while on the road ... while not performing job functions was not in line with [UJC's] image." . . . Finally, Plaintiff proffered evidence that, to the extent she may have violated procedures and regulations, such violations were "insufficient to warrant" her termination because they were commonplace among male employees who were not punished. . . . The jury found such evidence sufficient to prove that UJC's excuses were pretextual; the record does not compel us to hold otherwise.

*Braun*, 828 F.3d at 513-14 (record and case citations omitted).

In this case, Plaintiff's evidence is as strong as the plaintiff's evidence in *Braun*. As in *Braun*, Plaintiff offered an account of events that contradicted the account provided by Daly and other defense witnesses. Plaintiff also presented evidence showing that many of the complaints about her communication style arose from her efforts to enforce Defendant's EEOP policies. Indeed, even one of Defendant's own witnesses, Daly, confirmed this showing, noting that contractors were complaining about her enforcement of Defendant's EEOP policies. (RE 74, PageID 1832, 1835-36). A jury can infer that that an employer's proffered reasons for an adverse action were pretextual when those reasons arose from the employee's protected activity. *Yazdian v. Conmed Endoscopic Techs., Inc.*, 793 F.3d 634, 648-49 (6th Cir. 2015). Given this rule, Plaintiff's evidence and Daly's testimony provided a further basis for a finding of pretext.

To a great extent, the relative weight of Plaintiff's and Defendant's evidence depends upon an assessment of Plaintiff's and Daly's credibility. When a

defendant's proffered legitimate nondiscriminatory reason involves subjective assessments of the plaintiff's demeanor or communication style, the assessment of those subjective factors involves the credibility of witnesses and is therefore reserved exclusively for the jury. *Yazdian*, 793 F.3d at 649. When a verdict involves such assessments of credibility and subjective factors, a district court does not have discretion to substitute its own assessment for that of the jury. As the Sixth Circuit held:

> Indeed, there may be some instances when the allegedly insubordinate act may be a response to a sort of unspoken, subliminal discrimination in the workplace. For example, a woman who takes a strong position may be considered "pushy," whereas a man who does the same is "assertive." One manager may call a black man "aggressive" and a white man "passionate" for the same speech. These are just a few examples of how subjective these adjectival labels can be. And whether these adjectives are evidence of discrimination or are legitimate grounds for termination requires examining the words in context and the demeanor of the speakers—quintessential jury functions.

*Yazdian*, 793 F.3d at 652.

A Tenth Circuit case reaches the same kind of conclusion that the Sixth Circuit reached in *Braun*. In *Ware v. Unified School Dist. No. 492*, 881 F.2d 906 (10th Cir. 1989), which was cited by the Sixth Circuit in *Yazdian*, the plaintiff alleged that she was discharged in retaliation for exercising her free speech rights, but the defendant contended that her discharge was motivated by concerns about her demeanor and by the fact that her workplace relationships were deteriorating. The Tenth Circuit held that a district court erred when it vacated a jury verdict that involved an assessment

of subjective factors and witness credibility. In addressing whether the jury had

sufficient evidence to find that the discharge was caused by a retaliatory motive, the

Ware Court held that:

> The district court erroneously concluded that Ware's evidence was
> insufficient as a matter of law because it was subjective. A case such as
> this one, which may properly be proven by circumstantial evidence and
> reasonable inferences, will necessarily involve subjective elements.
> The evidence presented by both sides consisted largely of subjective
> evaluations of body language, tone of voice, facial expressions, the
> nature of the office atmosphere, and other inferences drawn from non-
> verbal conduct. In addition, the testimony as to the content of the
> critical conversations between Ware and Geil was directly conflicting.
> The weight given such subjective and contradictory evidence
> necessarily depends on an evaluation of the credibility of the witnesses,
> a function exclusively within the province of the jury.

*Ware v. Unified School Dist. No. 492*, 881 F.2d 906, 912 (10th Cir. 1989).

As in *Braun* and *Ware*, this case turned on the relative credibility of Plaintiff

and of Defendant's principal witness, Daly. If the jury found Plaintiff to be credible,

and if it doubted Daly's credibility, it could draw inferences and reasonably find that

Plaintiff proved both causation and pretext. The Sixth Circuit held that this would

be a reasonable outcome. *Jackson*, 999 F.3d at 352 ("there is some reason to question

Daly's credibility."). Consequently, when ruling that the jury's verdict on causation

issues was against the clear weight of the evidence, this court erroneously intruded

upon the exclusive province of the jury to determine matters of credibility and other

subjective considerations.

C.   *This Court erred in ruling that the jury's verdict was invalidated by instructional error because there was no material dispute about whether Plaintiff engaged in protected activity.*

This Court concluded that the jury verdict was invalidated by instructional error because the jury verdict form did not ask the jury to find whether Plaintiff had engaged in protected activity and because this Court instructed the jury that Plaintiff had engaged in protected activity. (RE 80, PageID 2083). Accepting Defendant's arguments, this Court determined that the Sixth Circuit's opinion was ambiguous about whether the jury would have to find that Plaintiff had engaged in protected activity, and therefore that it was error not to have put this question to the jury. (*Id*.). This conclusion was error because, given Defendants' arguments, and given this Court's summary judgment ruling, the Sixth Circuit's opinion recognized that there was no factual dispute about whether Plaintiff engaged in protected activity. Moreover, there was no evidence at trial to create such a factual dispute. Accordingly, there was no error in the jury instructions or verdict form.

As this Court noted, for a Rule 59 motion that alleges error in the jury instructions or jury verdict form, the question is "'whether, taken as a whole, the instructions adequately inform the jury of the relevant considerations and provide the jury with a sound basis in law with which to reach a conclusion.'" (RE 80, PageID 2066) (quoting *E.E.O.C. v. New Breed Logistics*, 783 F.3d 1057, 1074 (6th Cir. 2015)).  Erroneous jury instructions undermine a jury verdict only when they

17

are confusing, misleading, or prejudicial, and not when the instructional error is harmless. (RE 80, PageID 2066) (citing *New Breed Logistics*, 783 F.3d at 1074-75).

There was no error in instructing the jury that Plaintiff had engaged in protected activity because Defendant never offered a legally valid, fact-based defense to Plaintiff's allegations and evidence that she had engaged in protected activity. In moving for summary judgment, Defendant offered two arguments for why there could be no factual dispute about whether Plaintiff engaged in protected activity. The first was a purely legal argument. Defendant asserted that Plaintiff's only evidence of protected activity involved conduct that fell within Plaintiff's job responsibilities and that, as a matter of law, purely job-related conduct could not count as protected activity in a retaliation claim. (Defendant's Motion for Summary Judgment at 9-12, RE 14, PageID 75-78; Defendant's Reply Brief at 5-6, RE 16, PageID 688-89). The second involved factual matters: whether a jury could find Plaintiff had engaged in protected activity when the evidence showed beyond question that Defendant and its employees had always supported her workplace initiatives. (Defendant's Motion for Summary Judgment at 11-12, RE 14, PageID 77-78).

The Sixth Circuit's ruling invalidated both of these defenses on the issue of protected activity. It held that Plaintiff had sufficient evidence to prove that she engaged in two courses of conduct that constituted protected activity: her

18

investigation of Branch's discrimination complaint; and her efforts to enforce Defendant's EEOP policies. The Sixth Circuit concluded that the proffered defenses could not negate Plaintiff's evidence with respect to these two forms of protected activity. It held that there was no legal basis for Defendant's argument that Plaintiff's performance of job duties could not count as protected activity. *Jackson*, 999 F.3d at 345-46. The Sixth Circuit also held that Defendant's evidence about its support of Plaintiff was simply irrelevant to the question whether Plaintiff engaged in protected activity. Jackson, 999 F.3d at 347. The Sixth Circuit ruled that such evidence might be relevant to questions about causation, but it would have no bearing on the question of whether Plaintiff engaged in protected activity.

At trial, especially through her own testimony, Plaintiff submitted evidence to show that she had engaged in protected activity – specifically that she investigated Branch's complaints of discrimination and that she took action to enforce Defendant's EEOP policies. (RE 73, PageID 1501-02, 1572-88). Defendant did not submit contrary evidence, such as evidence showing that Plaintiff did not investigate Branch's allegations. Defendant did not present any evidence to show that Plaintiff did not make efforts to enforce Defendant's policies regarding contractors' EEOP compliance. Defendant did not present evidence to show that Plaintiff did not have a good faith belief that her investigative and enforcement actions were undertaken in opposition to discrimination. Defendant did not submit evidence to show that her

investigative or enforcement actions constituted a violation of any workplace rules or policies in connection with. Indeed, by noting that it had always supported these actions, Defendant effectively conceded that Plaintiff's protected activity did not involve a violation of any workplace rules or policies. Without such evidence from Defendant, there was no factual question for the jury to resolve. All of the evidence showed that Plaintiff engaged in protected activity.

Because there was no evidentiary dispute about whether Plaintiff engaged in either of these forms of protected conduct, there was no factual dispute and no question to present to the jury.

II.  **If this Court declines to reconsider its order granting a new trial, it should certify an interlocutory appeal from that order because the grant of a new trial involves a controlling question of law as to which there is substantial ground for difference of opinion and because an immediate appeal will materially advance the ultimate termination of this case.**

When a party moves a district court to certify an interlocutory appeal from a non-final order, it must establish two elements: (1) that the challenged order "involves a controlling question of law as to which there is substantial ground for difference of opinion;" and (2) "that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b).

With respect to the first element, "[a] legal issue is controlling if it could materially affect the outcome of the case." *In re City of Memphis*, 293 F.3d 345, 351 (6th Cir. 2002). "'A substantial ground for difference of opinion exists where

reasonable jurists might disagree on an issue's resolution, not merely where they have already disagreed.'" *In re Trump*, 874 F.3d 948, 952 (6th Cir. 2017) (quoting *Reese v. BP Exploration, Inc.*, 643 F.3d 681, 688 (9th Cir. 2011)). A question about the sufficiency of evidence of causation can be characterized as a controlling question of law as to which there is substantial ground for difference of opinion. See *Cardwell v. Chesapeake Ohio Railway Co.*, 504 F.2d 444, 445-46 (6th Cir. 1974).

This Court's order granting a new trial involves two controlling questions of law to which there is substantial ground for difference of opinion. First, as in *Cardwell, supra*, the question of the sufficiency of Plaintiff's evidence of causation can determine the outcome of this case and provides substantial ground for difference of opinion. Second, the question of whether there was a viable factual dispute about whether Plaintiff engaged in protected activity also meets this standard, especially because this question turns on an interpretation of the Sixth Circuit's opinion in this case.

An interlocutory appeal will advance the termination of this litigation because there will be no need for a new trial if the Sixth Circuit determines that the grant of a new trial was erroneous. Moreover, an interlocutory appeal is consistent with the interests of judicial economy because it would provide an opportunity for the parties and the Court to save the time and expense of a new trial.

21

## **CONCLUSION**

For all of these reasons, Plaintiff asks this Court to reconsider its order of April 21, 2023, granting Defendant's motion for a new trial. In the alternative, Plaintiff asks this Court to issue an order certifying an interlocutory appeal from the new trial order.

Respectfully submitted,

Dated: May 2, 2022

/s/    Paul Bernard
BERNARD LEGAL SERVICES, PLLC
Paul Bernard (P55722)
*Attorney for Plaintiff*
13 North Washington, Suite 176
Ypsilanti, Michigan 48197
734.548.9897
paul@bernardappeals.com